Statement of Facts.

## C. C. MONTOOTH ET AL. v. G. K. GAMBLE, FOR USE.

ERROR TO THE COURT OF COMMON PLEAS NO. 1 OF ALLEGHENY COUNTY.

Argued October 26, 1888—Decided January 7, 1889.

(a) By articles of agreement a coal plant, including shutes, tipple, sidings and cars, with the coal under a tract of land, was sold and conveyed, the privilege of mining and removing the coal to continue not longer than for a specified term, the coal then unmined to revert to the vendor:

(b) There was no covenant to repair nor to return anything upon the premises connected with the works, but the agreement contained a clause leasing to the vendee certain miners' houses for use while the coal was being mined, not longer than for the term specified; the vendee not to remove houses, shops or other buildings.

1. In such case, the agreement was an absolute conveyance of the coal plant and coal which should be mined, and the vendee had the right to remove the shutes, tipple, sidings, cars and other appliances necessarily connected with the mining and transportation of the coal.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK, WILLIAMS and HAND, JJ.

No. 144 October Term 1888, Sup. Ct., court below, No. 705 September Term 1886, C. P. No. 1.

To the first Monday of September, 1886, a summons in covenant issued in an action wherein George K. Gamble, for use of J. M. Montgomery, was plaintiff, and C. C. Montooth, administrator of George Gray, deceased, and Lewellin Barum, were defendants, to recover damages for the failure to re-deliver to the plaintiff "1200 feet of railroad T iron; 855 feet of railroad with strap iron; one incline 135 feet long, with drums; drum house; shutes; screens, etc., and a blacksmith shop; of the value of $10,000," on the termination of the lease of a coal plant to the defendants. The defendants pleaded, covenants performed, etc., and the statute of limitations.

At the trial on October 24, 1887, the plaintiff put in evidence an agreement under seal dated April 8, 1867, between George K. Gamble of the first part and George Gray and Lewellin Barum, of the second part, witnessing:

" That the said party of the first part hereby agrees to sell and convey unto the said parties of the second part, all the bituminous or stone coal which is now in or under a certain tract or parcel of land in Chartiers, now Union township, in said county of Allegheny, . . . . . together with the privilege to the said parties of the second part, to mine and remove the said coal, doing no unnecessary injury to the surface of said land, the said privilege of mining, etc., to continue for seven years from this date, and if the said coal shall be taken out in a less time than said seven years, the said lease to determine as soon as the said coal is all taken out, but to continue no longer than seven years from this date, whether said coal shall all be taken out within that time or not, unless the said parties of the second part should require to retain possession of said premises thereafter for the purpose of taking out other coal. In that case, the said lease shall continue if necessary to the end of the seven years.

" Also all the bituminous or stone coal which is now in or under a certain other tract of land situated in said township of Chartiers, now Union, which said tract contains . . . . . together with the privilege of necessary drainage and ventilation, . . . . . and the said privileges to be enjoyed by the said parties of the second part no longer under any circumstances than seven years from this date, and if the said coal should all be taken out in less than seven years from this date, the said privileges to cease and determine upon the said coal being all taken out, unless the said parties of the second part should require to retain possession of said premises thereafter for the purpose of taking out other coal. In that case, the said lease shall continue if necessary to the end of the seven years.

"Also, two certain leases of lots and privileges from Mrs. E. F. Denny . . . . .

"Also all that now remains of certain bituminous or stone coal in or under certain land of Acksah Snodgrass, . . . . .

"Also, the new St. Clair Railroad T Iron of the said party of the first part, . . . . . thirty-six distributing cars, . . . . . twenty mules, suitable for railroad and coal pits, . . . . . two two-horse wagons, . . . . . six houses and a blacksmith shop on the aforesaid Denny leases, . . . . . coal shutes and sidings for loading cars, . . . . . thirty-five large cars on the

Statement of Facts.

Little Saw Mill Run railroad, . . . . . seventy pit cars, more or less, . . . . . rights to purchase coal privileges, . . . . .

" For and in consideration of all which the said parties of the second part hereby agree to pay to the said party of the first part the sum of thirty-six thousand dollars, as follows, namely : . . . . . .

" And the said party of the first part hereby leases and rents to the said parties of the second part for the term of three years from this date, forty-three houses connected with and near to the said coal works, to wit, nineteen houses on the Patton farm aforesaid, twelve houses on the Foster farm and twelve houses on the Robert Snodgrass farm, for the yearly rent of forty-eight dollars for each house or two thousand and sixty-four dollars for the whole, to be paid monthly . . . . .

" It is further understood and agreed by and between said parties that the said parties of the second part shall, at the end of the said term of seven years from the date hereof, remove from and give up to the said party of the first part the said coal pits and coal privileges whether all the coal hereby sold shall have been taken out or not. And in case it shall not all have been taken out at that time, such part thereof as shall not then have been taken out, shall revert to and and become the property of the said party of the first part.

" If the coal shall all be taken out of said premises before the expiration of seven years from the date hereof, the said parties of the second part shall remove from said premises and give up peaceable possession thereof to the said party of the first part as soon as said coal shall have been taken out as aforesaid, unless the said parties of the second part should require to retain possession of said premises thereafter for the purpose of taking out other coal. In that case the said parties of the second part may retain possession for that purpose for any term not longer than seven years from this date.

" On the removal of the said parties of the second part from said premises, they shall have the right to remove the iron from said Saint Clair railroad sidings, etc., and the cars, shutes, wagons, tools of every description, etc., but that they shall not take down or remove any of the houses, shops, or other buildings. It is understood that the coal hereby sold amounts to about twenty-six acres more or less, but there is to be no reduc-

tion of the purchase money if there should be less or increase if there should be more than that amount.

. "The said party of the first part hereby reserves from the above sale and lease his office and buggy shed on one of the Denny leases aforesaid, and five stalls in the stable in the end next his office, and the ground used for stable purposes at the end of the stable next his office."

    \*      \*      \*      \*      \*      \*      \*

Indorsed upon said agreement was a receipt for the purchase money in cash and notes.

It then appeared in evidence that Gray & Barum went into possession and commenced to mine coal, under said agreement, and continued until August 1, 1868, when Barum sold his interest in the coal and other property described in the agreement to Isabella Bell, and soon after removed from the state. Thereafter the property was occupied and operated by Gray & Bell, who just before April 8, 1874, surrendered the premises, Gray removing with him, for use elsewhere, as was claimed by the plaintiff, the property described in the narr. Gray died in 1881, and Mr. C. C. Montooth became his administrator.

The court, BAILEY, J., charged the jury as follows :

It would seem that in January, 1867, the parties to this proceeding, one of whom is now dead but is represented here by his personal representative, made a contract respecting certain coal property and works connected with it, situate in the county of Allegheny; that an agreement was made in writing, which has been read to you, by which Mr. Gamble undertook to convey to Messrs. Gray & Barum the coal underlying certain lands and divers and sundry matters of personal property, coal cars, tools, etc. ; that, in pursuance of this agreement, the defendants, Gray & Barum, went into possession. There is no question that the property which is the subject of this action was received in possession by Gray & Barum (that is, the tipple, incline and siding or railway tracks at the bottom of the tipple), by virtue of this agreement, and that it remained in their possession until the time when, it is alleged, they violated this agreement by removing and taking away, for their own uses, the property in controversy here ; the incline, tipple, siding and whatever else there may be involved. This action is brought under an al-

leged covenant in the agreement to re-deliver all the property not absolutely conveyed by the agreement.

Now, the rights of the plaintiff to recover what he claims, if he be entitled to recover at all, arise under the possession taken in pursuance of this agreement. The allegation on the part of the plaintiff is, that these defendants were bound to deliver back to him this property at the end of the lease of seven years, but that, instead of doing so, they took the property and carried it away, and therefore he is entitled to damages. On the other hand, as I recollect it, counsel will correct me if I be mistaken, apart from some legal propositions there are two answers made by the defendants to this claim of the plaintiff:

1. That the plaintiff, Mr. Gamble, prior to the termination of this lease, had conveyed the surface land upon which were these various articles, the tipple, etc., and that, therefore, whoever is entitled to recover, if anybody, Mr. Gamble is not. And

2. That this property was conveyed to the defendants by this agreement, and therefore they had a right to make such use of it as they saw proper. Those are the two principal matters of defence.

I can state what I have to say in respect to these matters and any other legal questions involved, in answer to the points submitted by the counsel for the defendants. I will not take them in the order they have been presented, but in an order that will suit my purpose better. The seventh point of the defendant goes to the right of the plaintiff or any other party to recover.

7. If the tipple, etc., were removed wrongfully, the right of action accrued immediately, and if no action was brought therefor within six years after such removal, the statute of limitations is a complete bar, and the plaintiff cannot recover.

Answer: Refused.

5. If any action accrued to the plaintiff for the removal of any property from the premises after the expiration of the agreement in evidence, the action should be trespass against the wrongdoers, and not covenant against the defendants in this suit; and, more than six years having elapsed since said trespass and before the bringing of this action, the statute of limitations is a complete bar.

Answer: Refused.[5]

Under all the evidence in the case the plaintiff is not entitled to recover.

Answer: This point, if affirmed, would take the case entirely from you, and leave you no duty to perform, and is refused.[2]

2. There is no competent evidence to show that the use plaintiff has any interest in the property in dispute.

Answer: Affirmed.

6. That the agreement between Gamble and Gray & Barum does not contain any covenant to leave the property in dispute on the premises; therefore, the plaintiff has no right of action therefor, and cannot recover in this form of action.

Answer: Refused. If there be no covenant expressed in words, there is an implied covenant in every lease of property, (as this would practically be), to re-deliver the property at the expiration of the lease, reasonable wear and tear and accidents excepted.[6]

The third and eighth points are upon the same subject matter:

3. There is no evidence to show that George K. Gamble has any interest in the property in dispute.

Answer: To affirm this point would be to take the matter entirely out of your hands and it is refused.[3]

\*    \*    \*    \*    \*    \*    \*    \*

The other defence is contained, as I take it, in the fourth point:

4. Under the terms of the agreement of sale between Gamble and Gray & Barum, defendants had a right to remove the property therein sold, excepting the office and stable reserved therein for the use of the grantor.

Answer: That point as drawn can be affirmed. Of course, whatever was sold to these defendants, they had a right to take away. But it was probably not intended to be limited to that, but was intended to mean this property in controversy, it not being excepted. The only question is whether this property was sold. If I am asked to instruct you, that, under the terms of the agreement, they had a right to remove the property in controversy, the point is refused. From my reading of the agreement, the property which these defendants had a right to remove was the property specified in the agreement, and that

only, and with a limitation, possibly, because, "also the New St. Clair Railroad" was conveyed to them, and so on, and subsequently they were limited to the removal of the iron from the said St. Clair Railroad; and then, as to the siding, etc., they had a right to remove it. But I understand the expression that has been read to you, "on the removal of said parties of the second part from said premises, they shall have the right to remove the iron from said St. Clair Railroad, cars, tools," etc., to apply, and I so instruct you, to the articles specifically mentioned in this agreement. But I do not find in the article any conveyance to these defendants of this tipple, incline or siding, or whatever it may be called, at the foot of it, and as to those, under this agreement they had no right to remove them. I so instruct you.[4]

The jury returned a verdict for the plaintiff for $1,993.75. A rule for a new trial having been discharged, the defendants took this writ, assigning as error, inter alia:

2–6. The answers to defendants' points.[2 to 6]

*Mr. Joseph Hays* and *Mr. C. S. Fetterman*, for the defendants in error:

It was not pretended on the trial that anything was omitted from the agreement, either through fraud or mistake, and the action was in affirmance of the contract as set out in the narr. The case is therefore ruled by Merriman v. Bush, 116 Pa. 287, and the court should have affirmed the defendants' first point. But the court ruled, in effect, that the agreement was a lease, and not a sale, and, having so decided that question, submitted to the jury to find whether the alleged lease contained a covenant to re-deliver the property or not. There is no covenant of that kind in the agreement. The action was upon a written and sealed instrument and according to the law of Merriman v. Bush, supra, the plaintiff could only recover upon "a covenant contained in the agreement." Instead of so instructing, the court said, in the answer to the defendants' sixth point, "If there be no covenant expressed in words, there is an implied covenant in every lease of property (as this would practically be), to re-deliver the property, at the expiration of the lease, reasonable wear and tear and accidents excepted." This instruction

is clear error. Courts of law cannot incorporate into a sealed instrument what the parties left out of it, even though the omission was occasioned by the clearest mistake ; nor can they reject what the parties inserted, unless it be repugnant to some other part of the instrument : Hudson Canal Co. v. Penn. Coal Co., 8 Wal. 276.

*Mr. W. F. McCook,* for the defendant in error :

1. It is evident that apt technical words have not been used in the contract to express either a conveyance or a lease of the coal works. But an exclusive possession is granted ; the term thereof is fixed, and a right of reversion is declared to be in the grantor. " No form of words is required to constitute a lease. It is not necessary that the term, lease, should be used. Whatever is equivalent will be equally available. If the words assume the form of a license, covenant or agreement, and the other requisites of a lease are present, they will be sufficient. These requisites are, a term of years, with a certain beginning and ending, granted by the lessor to the lessee : " SHARSWOOD, J., in Bussman v. Ganster, 72 Pa. 285 ; Taylor on Landlord & Ten., § 159 ; Wood on Land. & Ten., § 210 ; Mitchell v. Commonwealth, 37 Pa. 187.

2. If then, the instrument, so far as relates to the coal works, is a lease, the defendants were in possession as tenants. The premises described include the structures. The lessees took possession of them during the term under the lease and used them as a necessary part of the plant during the whole term. The defendants agreed to remove only the iron from the St. Clair railroad, yet they tore up and took away the iron from the pits, incline and railroad sidings two miles away. They expressly agreed not to take down or remove any of the houses, shops or other buildings, yet they tore down and removed the blacksmith shop and the entire building inclosing the drums, incline, screens, etc., which constituted the tipple. They therefore violated their express covenant, in not returning the coal pit at the end of the term as they received it.

OPINION, MR. JUSTICE HAND :

The plaintiff brought his action of covenant to recover the value of certain "shutes, tipples, inclines, and shops," which

he alleges were leased to the defendant under a covenant to return them at the expiration of the lease. The agreement, which is the basis of the action, is a formal instrument, and contains two parts; the first part a clear and unequivocal conveyance of coal with the right to mine, sometimes in common parlance called a coal lease, and the second part a technical lease of forty-three houses under certain stipulations by which the ordinary relation of landlord and tenant is created. It is not necessary to state all the details of facts covered by the evidence in this case, for an observance of the exact nature of the agreement, as above stated, would have disposed of all the questions involved in the case, and decided them under the law in favor of the plaintiff in error. That, so far as any controversy in this case is concerned, the instrument in writing is to be taken as a sale and conveyance of the articles for which this verdict was allowed to be recovered, is settled by numerous cases from Caldwell v. Fulton, 31 Pa. 475, down to Railroad Company v. Sanderson, 109 Pa. 583.

The instrument is in terms a sale and conveyance; it is of all the coal, and is exclusive in the vendees. In Railroad v. Sanderson it was determined that it makes no difference what the parties call the instrument, whether lease or deed, or what terms they use to express the parties or the consideration paid, the whole instrument must be taken into view to ascertain the intent of the parties. If that fixes its character as a sale or conveyance it must so stand. In the instrument in question, a coal plant with the coal to be mined was sold and conveyed. Specifically, the agreement sold and conveyed houses, a blacksmith shop, shutes, drums, and an almost exhaustive mention of appurtenances necessarily connected with the mining and transportation of coal. In this part of the agreement there was no covenant to repair, nor to return anything whatever. There was the right granted to remove iron, "&c.," shutes, "&c.," and the provision that they shall not take down or remove any of the houses, shops or other buildings. This provision is after the technical leasing of the forty-three houses above referred to, but if it be taken to be part of the conveyance, it would only apply to the single blacksmith shop mentioned in the evidence, and which had, under the undisputed evidence, been so long in use and become so decayed and dilapidated that its removal

was a work of necessity for the purposes of safety to those who came near it. It was of so little value that the maxim, de minimis non curat lex, would apply under the circumstances of this case. It would be unnecessary to mention this, but the counsel for the plaintiff has placed its connection with the property sold as if controlling the disposition of the latter, and the court below, taking the covenants relating to the forty-three houses as applying to the conveyance of the coal and the machinery necessarily connected therewith, has treated the whole instrument throughout as technically only a lease. In this there is manifest error.

In regard to the incline and the tipple, the evidence shows they were an independent structure of great value, originally erected by the defendants themselves to enable them to carry out their covenants in the conveyance; that they took the place of a temporary or inadequate shute or dump which had been destroyed. It is very doubtful if it would not be a fixture under a mere leasehold interest which the tenant has the right to remove, either without express right or under such terms as are contained within the clauses of this agreement which are of the nature of a lease. Be this as it may, an examination of the entire testimony in the record shows that the plaintiff had no cause of action, and the first point of the defendant's counsel should have been unqualifiedly affirmed. The learned judge seems to have refused the point for the reason that it would have left no duty for the jury to perform. This is always true where the whole burden of the case under the law and the evidence is upon the court. The court did more explicitly answer the fourth point of the defendant which probably contains the reasons not expressed in the answer to the first point, but, as we have seen already, the error of confusing the clauses for a lease of the houses with an actual conveyance of the coal and property in question, runs through the answer, as it does the charge of the court to the jury.

The judgment in this case is reversed.