# Coolbaugh, Appellant, *v.* Lehigh & Wilkes-Barre Coal Company.

*Mines and mining—Coal lease—Sale of coal—Estate in coal—Sheriff's sale —Royalties.*

A coal lease gave to the lessee the right to mine and remove 80,000 tons of coal annually, and was to determine and end when all the minable coal should be removed, unless the term should be sooner ended under other provisions contained in the lease. An annual rental of $20,000 was to be paid to the lessors. It was further provided that if the lessee "shall pay twenty thousand dollars rent in any one year, as is hereinbefore provided, and during that year less than eighty thousand tons of coal, of the pounds aforesaid, be mined and removed, the said party of the second part may, in any subsequent year within six years thereafter, during the continuance of this lease, mine and move sufficient coal to make up the deficiency." On default in the payment of "an installment of rent, or any part thereof," for a period of sixty days, it was covenanted that the lessors, in their option might declare the term of the "lease" at an end, and the "lease" was thereupon to absolutely cease and determine. The royalties were duly paid, and more than six years after the date of the lease a judgment was entered against one of the lessors, and all "his right, title and interest in and to all the coal in and under" the land embraced in the lease was sold at sheriff's sale, and thereafter the share of the royalties previously paid to the defendant in the execution was paid to the purchaser at the sheriff's sale. *Held,* (1) that under the terms of the lease the lessor retained an interest or estate in the coal to which a lien of a judgment would attach; (2) that after the sheriff's sale the royalties were properly paid to the purchaser of the lessor's interest; (3) that although an ordinary coal lease may in a sense be a sale of coal in place, yet the rules applicable to sales are not to be applied indiscriminately to such instruments, but each is to be construed like any other contract by its own terms.

In the above case until the coal was mined, the legal title remained in the lessors, and if not taken from them within six years during the continuance of the lease in the manner stated, the money paid them belonged to them as rental for their land which had been occupied by the lessee, although not used and appropriated by it as it had the right to do.

MESTREZAT, J., dissents.

Argued April 13, 1905. Appeal, No. 89, Jan. T., 1905, by plaintiff, from order of C. P. Luzerne Co., May T., 1904, No. 314, discharging rule for judgment for want of a sufficient affidavit of defense in case of J. R. Coolbaugh, administrator of Milton Dana, deceased, v. Lehigh and Wilkes-Barre Coal

Company.    Before Mitchell, C. J., Brown, Mestrezat, Potter and Elkin, JJ.    Affirmed.

Rule for judgment for want of a sufficient affidavit of defense.    Before Ferris, J.

The facts are stated in the opinion of the Supreme Court.

*Error assigned* was in discharging rule for judgment.

*F. C. Sturges,* with him *F. M. Nichols,* for appellant.—The appellant's position is, that the instrument was a deed, and conveyed to the coal company the title in fee simple to the coal in place as land, and that the only remedy of a creditor of the said Dana was in proceedings by attachment execution : Sanderson v. Scranton, 105 Pa. 469 ; D., L. & W. R. R. Co. v. Sanderson, 109 Pa. 583 ; Dorr v. Reynolds, 26 Pa. Superior Ct. 139 ; Hosack v. Crill, 204 Pa. 97.

The nature of the estate conveyed by an instrument of this character has been held to be an estate in fee simple : Lillibridge v. Coal Co., 143 Pa. 293 ; Webber v. Vogel, 189 Pa. 156.

The only remedy of a creditor was by an attachment execution : Hare v. Com., 92 Pa. 141 ; Fulweiler v. Hughes, 17 Pa. 440 ; Kieffer v. Ehler, 18 Pa. 388.

It has been repeatedly decided that a chose in action cannot be sold on a writ of fieri facias : Rickert v. Madeira, 1 Rawle, 325 ; Rhoads v. Megonigal, 2 Pa. 39.

*S. J. Strauss* and *A. H. McClintock,* with them *Arthur Hillman,* for appellee.—It is perfectly consistent to hold that coal leases are sales—we do not attempt to controvert this—but we say that they are conditional sales, not the absolute sales as maintained by the appellant, and when this position is conceded, and it is the only logical position following directly from the decisions of this court, all difficulties in the way of deciding this case, in the manner followed by the court below, disappear, and no other conclusion can be reached : Stewart v. Coder, 11 Pa. 90 ; Hiester v. Green, 48 Pa. 96 ; Heist v. Baker, 49 Pa. 9 ; Bear v. Whisler, 7 Watts, 144 ; Strauss's App., 49 Pa. 353 ; Bonebrake v. Summers, 193 Pa. 22 ; Eichelberger v. Gitt, 104 Pa. 64 ; Schnyder v. Orr, 149 Pa. 320 ; Manning v. Frazier, 96 Ill. 279 ; Duffy's Estate, 209 Pa. 390.

OPINION BY MR. JUSTICE BROWN, October 9, 1905:

On August 30, 1870, Milton Dana and others, owners of coal lands in Luzerne county, entered into an agreement with the Wilkes-Barre Coal and Iron Company, granting, demising and leasing unto it, its successors and assigns, all the coal in said lands. The appellee succeeded to all the rights of the original lessee. The demise or lease, as the agreement is termed by the parties, was to date from January 1, 1870, and "to determine and end when all the mineable (and) anthracite coal shall have been mined and removed from the demised premises, unless the term be sooner ended under provisions" thereinafter contained. The lessee covenanted to pay to the lessors the annual rental of $20,000, in quarterly installments of $5,000 each, in consideration of which it is permitted annually to mine and remove 80,000 tons of coal. There is a further provision that, "if the said party of the second part shall pay said twenty thousand dollars rent in any one year, as is hereinbefore provided, and during that year less than eighty thousand tons of coal, of the pounds aforesaid, be mined and removed, the said party of the second part may, in any subsequent year within six years thereafter, during the continuance of this lease, mine and move sufficient coal to make up the deficiency." On default in the payment of "an installment of rent, or any part thereof," for a period of sixty days, it was covenanted and agreed that the lessors, in their option might declare the term of the "lease" at an end, and the "lease" was thereupon to absolutely cease and determine.

Dana received his share of the payments made for the coal mined and removed up to April 1, 1880. On April 3, 1880, on an execution upon a judgment against him, the sheriff of the county sold to Joseph Birbeck and Alexander H. Van Horn all his "right, title and interest in and to all the coal in and under" the land embraced in the lease. Since the sale and delivery of the sheriff's deed to these vendees of Dana's interest the payments for the coal mined and removed have been made to them. The affidavit of defense, in addition to the allegation of Birbeck's and Van Horn's ownership of interest in the coal and their right as the sheriff's vendees to receive payments for the same as mined, avers that the payments were made to them in the lifetime of Dana with his

knowledge and consent; that since his death they were made without protest or objection from any of his heirs or personal representatives; that there has arisen a complete and final presumption of law that Birbeck and Van Horn acquired the title for a full consideration and have paid for the same to the said Dana or the persons who, on his behalf, were entitled to receive the rentals, and, therefore, his administrator, who brings this suit, is estopped from asserting a right to recover.

The questions raised by the statement and affidavit of defense are properly stated by the court below to be (1) " Whether the sheriff's sale to Birbeck and Van Horn passed to them the right of the execution defendant Dana to receive ' rentals ' or royalties under the coal lease;" (2) " If not, then, is the administrator of his estate estopped from now asserting the right to recover from the defendant company royalties already paid to the sheriff's vendees or their representatives?" (3) " Would the facts averred, if proven, raise a presumption of a grant by Milton Dana to said vendees, of his right to receive such royalties?" Having been of opinion that the first of these three questions should be answered in the affirmative, and having so answered it, the court below deemed the discussion of the other two unnecessary.

Though the agreement of August 30, 1870, is called by the parties to it a demise or lease, we have, from Hope's Appeal, 29 W. N. C. 365, down through a long line of cases, called it a sale of coal in place as land: Sanderson v. Scranton, 105 Pa. 469; D., L. & W. Railroad Co. v. Sanderson, 109 Pa. 583; Lillibridge v. Coal Co., 143 Pa. 293; Kingsley v. Coal and Iron Co., 144 Pa. 613; Lazarus's Est., 145 Pa. 1; Denniston v. Haddock, 200 Pa. 426. In the last case cited the lease was for twenty years and provided for the payment of a minimum royalty. It was executed on September 27, 1870, by Margaret Denniston and others to Charles Hutchinson, whose interest became vested in Haddock, the appellant. It appeared that Hutchinson and his successors in title had paid royalty during the whole term of the lease, but, on account of strikes and other circumstances, were prevented from mining coal to the full extent of the minimum paid. On September 22, 1891, the lessors executed a new lease, to take effect from October 1, 1891. Haddock, the lessee, had been continuously

in possession of the property during the terms of both the old and the new lease and the period between them.   He claimed to defalk the overpayments under the old lease, amounting to $15,000, from the royalties due under the new lease, and, in affirming the judgment of the court below, refusing to allow such set-off, what was said by the present Chief Justice may now be very properly quoted at length as supporting appellee's contention: " It has been said in a number of cases that a conveyance of the right to mine and remove all the coal°in a given tract of land, is a sale of the coal in place although the conveyance may be called a lease.   The expression is unfortunate, for while it may have produced no erroneous result in the cases where it is used, it tends to substitute the general rules appertaining to sales, for the rules properly applicable to the particular contract that may be under consideration by the court.   Thus, for example, in Hope's Appeal, 29 W. N. C. 365, which is practically the starting place of the error, the agreement though called a lease was a purchase of the coal at a fixed price per acre, making a liquidated gross sum, which was payable absolutely in instalments ending within thirteen years, though the lessee had a nominal term of ninety-nine in which to remove the coal.   It was justly said by the learned court below whose decision was affirmed here that it was ' manifest that the parties contemplated an actual sale of the coal, and not a lease in the ordinary use of that word.'   In Sanderson v. Scranton, 105 Pa. 469, the lease was expressly made ' perpetual until all the coal under the tract is mined,' and it was held that this was such a complete severance that the taxes of the city of Scranton on the coal in place were chargeable to the lessee and not the lessor.   So in Kingsley v. Hillside Coal & Iron Co., 144 Pa. 613, it was again held that there was such a severance that occupation of the surface was not an adverse possession even against a lessee who had not opened up or entered on actual possession of the coal.

" With the decisions in these cases no fault can be found, but the expression that a conveyance of coal in place, even by a lease for a limited term is a sale, is inaccurate as a general proposition of law, and unfortunate from its tendency to mislead, which is apparent in some of the subsequent cases. Whether it would be better to call such an instrument accu-

rately what it certainly was at common law, a lease without impeachment of waste, or to endeavor to reconcile all the decisions by calling it a conditional sale, is not necessary at present to discuss. The point to be noted is that the rules applicable to sales are not to be applied indiscriminately to such instruments but each is to be construed like any other contract by its own terms.

"The defense in the present case is an ingenious misapplication of the principle of a sale. Appellant in compliance with his obligation under the lease paid a minimum royalty each year, and at the end of his term had paid more royalty than would have been required by the coal actually mined. He remained in possession of the land for a year under arrangement with one of the owners, and then took a new lease, under which the royalties now sued for accrued. He now claims to defalk the overpayments under the old lease, on the ground that he had paid for the coal and was entitled to it without further charge, because under his continued possession he could take it away without a trespass. The defect of this view is in the assumption that he had paid for the coal. He had not. He had paid his rent on the stipulated terms, but he had paid nothing for the coal in place. His sole claim and title to that was to mine it during the term of the lease. As to it he was in the position of a lessee of a house bound to pay rent whether he occupied it or not. The fact that he paid without occupying it would not excuse his liability for further rent if he accepted a new lease.

"Appellant admits that if he had gone out of possession at the termination of his lease, he would have had no further claim to the coal, but his reason assigned is not the correct one. The right to remove the coal would have ended, not because the lessee had forfeited or abandoned his property in it, but because he had never acquired any such property, his right to do so being expressly limited to the term covered by the lease."

In D., L. & W. Railroad Co. v. Sanderson, supra., the question was as to who should pay the taxes on the coal as land—the lessor or lessee under a coal lease—and TRUNKEY, J., distinctly stated that no question arose "respecting the grantors' security for the purchase money, nor of their power to subject their right under the deed to the lien of a mortgage." Here

the question is as to the power of the grantor, Dana, to subject to the lien of a judgment the interest remaining in him under the agreement with the Wilkes-Barre Coal and Iron Company.

If the lessee had paid the rental of $20,000 for the first year, but had mined no coal, and in the second year, on its default in payment of a quarter's rent, the lessors had, in accordance with the terms of the lease, declared it terminated, and resumed possession under the forfeiture clause, the lessee could not thereafter have mined and removed any coal because it had paid $20,000 for the first year. This is the clear meaning and intent of the contract. That sum would have been retained simply as rent paid and received as such for the right to occupy and use the land by removing the coal therefrom for one year: Lehigh & Wilkes-Barre Coal Co. v. Wright, 177 Pa. 387; Lehigh Valley Coal Co. v. Everhart, 206 Pa. 118. It is only " during the continuance of the lease," that is, before the rights of the lessee have terminated by a forfeiture of them, that it can, during any six years following an annual payment of $20,000, appropriate to the payment of coal mined so much of that sum as has not been appropriated in any prior year to the payment of coal mined. After the expiration of six years no such appropriation can be made, and the minimum royalty is to be retained purely as rent for the year's occupancy of the land.

The agreement of the parties is that the minimum rental of $20,000 may be applied by the lessee on account of the purchase money of the coal, provided it will actually purchase and acquire title in the manner pointed out in the agreement, viz.: by mining it within six years. Until it is so mined the legal title remains in the lessors, and if not taken from them within six years during the continuance of the lease in the manner stated, the money paid them belongs to them as rental for their land which had been occupied by the lessee, though not used and appropriated by it as it had the right to do. This was just the situation when the interest of Dana in the coal land was seized and sold under the execution against him. If the coal had all been mined, the worked-out space would have reverted to him, and what had not been worked out was under a continuing contingency of reverting to him by a forfeiture of the lease. He still had an interest in the coal as land, title to por-

tions of which, and in the end to all of which, he had agreed should pass from him and become vested, not only equitably, but legally, in the lessee, as from time to time it acquired the legal title to the coal by mining and removing it.   But until the legal title was so taken from him it remained in him, as in the case of any vendor of real estate.   This is the title that was still in him when it was sold from him by the sheriff to Birbeck and Van Horn, and having acquired it, they are now entitled to all the rights under it.   The one involved in this case is the right to the royalties, which, under the agreement of August 30, 1870, are to be regarded as pro tanto purchase money payments for the coal in place, if mined and removed within a stipulated time.   The title thereto is acquired by using these royalties within the stipulated period of six years during the continuance of the lease as payments for coal actually taken out and away.

As the question raised on this appeal did not arise in any of the cases holding a lease like the present to be a sale of coal in place as land, they are not to be regarded as in conflict with the view here expressed.   Though expressions in some of them are apparently irreconcilable with it, it is to be remembered, as is said in Denniston v. Haddock, " the rules applicable to sales are not to be applied indiscriminately " to these leases ; and when, as here, the question is as to the right of the grantor or lessor to subject the interest in the land which remains in him to the lien of a judgment or mortgage, no other doctrine than the one announced by the court below can accord with reason or the authorities relating to the interest retained by a vendor under an agreement for the sale of his land.   The order of the court below discharging the rule for judgment is affirmed.

MESTREZAT, J., dissents.