CASE 26.—PROCEEDINGS BY THE BOARD OF SUPERVISORS OF WOLFE COUNTY IN FIXING A VALUATION UPON PROPERTY FOR TAXATION IN SAID COUNTY IN WHICH T. M. BECKETT AND OTHERS APPEAL.—April 19.

# Wolfe County, &c., v. Beckett, &c.

Appeal from Wolfe Circuit Court.

ROBERT RIDDELL, Circuit Judge.

From the judgment the County and the Commonwealth appeal—Reversed.

1. Taxation—Property Subject to.—Subject to constitutional limitation, everything to which the legislative power extends may be taxed, whether person or property, tangible or intangible, franchise, privilege, occupation, or right.

2. Same—Oil and Gas Wells.—Under Ky. Stats., 1903, section 4020, making taxable all property not exempted by the Constitution, and under section 4039, re-enacted in Acts 1906, p.

Wolfe County, &c., v. Beckett, &c.

93, ch. 22, section 20, requiring all persons owning any mineral rights on the land of another, or any oil or gas privileges by lease or otherwise, etc., to list them for taxation, oil and gas wells held under a lease vesting ownership of the oil and gas in the lessee and continuing so long as oil or gas may be found in paying quantities are taxable.

3. Same—Listing Property—Statute Construed.—Ky. Stats., 1903, section 4039, requiring all persons owning any property, mineral rights, or branded trees on the lands of another, or any coal, oil, or gas privileges, in the State, other than in the county in which they reside, or if they reside out of the State, to list the property for taxation personally or by agent in the county where situated as is required of resident owners, etc., applies to both residents and non-residents.

4. Same—Oil and Gas Wells—Apportionment.—In taxing oil and gas privileges held under lease, there should be deducted from the value thereof the part represented by the amount of oil reserved to the lessor by the lease; the remainder being taxable against the lessees.

G. B. STAMPER and S. G. SAMPLE for appellants.

AUTHORITIES CITED.

Ky. Stats., sections 4120, 4020 and 4039; Acts of 1906, p. 89, section 4; Wilgus v. Comth., 9 Bush (72 Ky.), 556; Harvey Coal & Coke Co. v. Dillon, Tax Commissioner, 53 S. E. Rep., 928.

FULKS & HOVERMALE and GOURLEY, REDWINE & GOURLEY for appellees.

AUTHOITIES CITED.

Kincaid v. McGowan, 88 Ky., 91; Stewart, Trustee, v. Comth., 94 Ky., 595; Fox v. Long, 8 Bush, 551; Arnold v. Smith, 3 Bush, 163; Creutz v. Heil, etc., 89 Ky., 429; Carter v. Tyler County, 43 L. R. A., 725; Wilson v. Youst, 39 L. R. A., 292; Williamson v. Jones, 25 L. R. A., 222; Ky. Stats., sections 4024, 4039 and 4058; Comth. v. Hollidy, 98 Ky., 616; Comth. v. Tencray, 21 Ky. Law Rep., 572; Comth. v. Engle, 21 Ky. Law Rep., 101.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, Commissioner—Reversing.

Appellee. T. M. Beckett listed for taxation in Wolfe county for the year 1907, along with other property, certain property of the value of $1,000 under the items, "Steam engines and boilers." This the board of supervisors for the county raised to $3,000. Under the items, "Coal mines, oil, gas and salt wells," he listed property of the value of $14,000. This the board of supervisors raised to $55,825. Appellee Milton Garver listed for taxation in the same county for the year 1907 under the items, "Coal mines, oil, gas and salt wells," property of the value of $2,500. This valuation the board of supervisors raised to $5,000. Appellee Morehead Oil & Gas Company had listed to it by the board of supervisors for the year 1907, under the items, "Coal mines, oil, gas and salt wells," property of the value of $15,000. From the final action of the board of supervisors, appellees herein appealed to the Wolfe county court. That court sustained the action of the board of supervisors. Appellees then appealed to the Wolfe circuit court. There they filed a petition alleging that they held the oil and gas wells by leases, but they had no title to the realty covered by their respective leases; that the leases simply gave them a license or privilege to go upon the lands, and drill and explore for oil, and pump the same; and that the oil under the lands covered by the leases was realty until severed from the soil, and was not properly taxable to appellees. They then asked that the action of the board of supervisors in listing the oil and gas wells to them be declared to be invalid, and that the valuation as

fixed by the assessor be adjudged to be the proper valuation of the personal property to be listed by each of the appellees. A demurrer was interposed by appellants, Wolfe county and the Commonwealth of Kentucky, which was overruled by the court, and, the appellants having declined to plead further, the court entered judgment to the effect that the oil in place and in oil wells, except as oil is produced by same, is a part of the realty and belongs to the owner of the surface until it is taken from the ground, or until the owner makes absolute deed to the oil under the surface, thus separating it from the realty, and that a lease for a term of years, or any time less than a life estate, is not such an interest in real estate as requires the tenant or lessee to pay the taxes on the leased premises. From that judgment the county of Wolfe and the Commonwealth of Kentucky are here on appeal.

It will be observed that this appeal involves the following questions: (1) Are oil and gas wells held under lease taxable? (2) If they are taxable, who should pay the tax, the lessor or lessee?

Before passing upon these questions, it may be well to advert to the general principles of law regulating the subject of taxation. It is well settled that the power to impose taxes is one so unlimited in force, so searching in extent that the courts scarcely venture to declare that it is subject to any restrictions whatever, except such as rest in the discretion of the authority which exercises it. McCulloch v. State of Maryland, 4 Wheat. (U. S.) 431, 4 L. Ed. 579. It may touch property in every shape—in its natural condition, in its manufactured form, and in its varied transmutation. It may touch business in the almost infinite forms in which it is conducted—in profes-

sions, in commerce, in manufacture, in transportation. State Tax on Foreign-Held Bonds, 15 Wall. (U. S.) 309, 21 L. Ed. 179. Everything to which the legislative power extends may be the subject of taxation, whether it be person or property, franchise or privilege, occupation or right. Nothing but special constitutional limitation upon legislative authority can exclude anything to which the authority extends from the grasp of the taxing power, if the Legislature in its discretion shall select it for revenue purposes. Cooley on Taxation page 9. This extends to property, whether it be tangible or intangible, and it matters not in what the intangible property consists, whether privilege, corporate franchises, contracts, or obligations. It is enough that it is property, which, though intangible, exists, which has value, produces income, and passes current in the markets of the world. To ignore this intangible property, or to hold that it is not subject to taxation at its accepted value, is to eliminate from the reach of the taxing power a large proportion of the wealth of the country. People v. Tax Commissioners, 190 U. S. 1, 25 Sup. Ct. 705, 50 L. Ed. 65.

Bearing these principles in mind, what has the Legislature declared to be taxable? Section 4020, Ky. St. 1903, provides as follows: "All real and personal estate within this State, and all personal estate of persons residing in this State, and of all corporations organized under the laws of this State, whether the property be in or out of this State, including intangible property, which shall be considered and estimated in fixing the value of corporate franchises as hereinafter provided, shall be subject to taxation, unless the same be exempt from taxation by the Constitution, and shall be assessed at its fair

cash value, estimated at the price it would bring at a fair voluntary sale." Under this section, all property not exempted by the Constitution is made subject to taxation. It is contended, however, that property held under lease is not subject to taxation in the hands of the lessee. As a general proposition this is true, but there is a wide difference between an ordinary lease of lands and an oil or gas lease. Under the former, the lessee has only the right to occupy and cultivate the land, and take therefrom the growing crops. At the expiration of his lease, the property is intact. Its condition is substantially the same as it was when he entered upon the land. The property owned by the lessor is not diminished. Its value is practically the same. This is not true however, of an oil or gas lease. The latter carries with it not only the privilege of going upon the lands for that purpose, but the right to take therefrom during the continuance of the lease such oil or gas as may be found. The title to the oil or gas is vested by the lease in the lessee. It is his property of recognized value. He controls it and disposes of it as his own. Not only is the oil or gas property, but the lease under which it is taken from the ground is property which has substantial value and is the subject of frequent sale. If at the expiration of the lease the property be returned to the lessor, its value has been diminished to the extent that oil and gas have been taken therefrom, and the value of the property to that extent has been enjoyed by the lessee.

It is contended, however, that the oil in situ, being a part of the realty, cannot be severed therefrom except by deed. It is admitted that the leases held by appellees are of the usual kind. They give to appellees the right to drill and operate for oil and

gas for a definite term of years, and, in case oil or gas is found in paying quantities, to continue said operations so long as same is found in quantities that pay. Appellees agree on their part to deliver one-eighth of all oil found by reason of such operations in suitable pipe lines to the owner of the fee, the lessor, and to pay a fixed sum per year for each well the product of which is carried and marketed from the premises. The remainder of the oil or gas is the property of the lessees. Why, then, say that a deed is necessary to sever the oil from the realty, when the lease accomplishes the same result? During the continuance of the lease, the ownership of the oil or gas is vested in the lessee; and, as the lease continues so long as oil or gas may be found in paying quantities, does not the lessor part with his title to the oil in situ for all practical purposes, for the reason that it has no value if it cannot be produced in quantities that pay? We therefore conclude that the form of contract is immaterial, and that it makes no difference whether the oil or gas privileges be conveyed by deed or lease, just so the effect of the instrument is to vest in the lessee all property rights to the oil or gas that may be found in paving quantities on the leased premises. In this view we are confirmed by the Supreme Court of West Virginia in Harvey Coal & Coke Co. v. Dillon, 53 S. E. 941, 6 L. R. A. (N. S.) 628, wherein the court said: "There can be several estates or interests, each property in a tract of land. Especially can there be a chattel real, savoring of it, issuing out of it. Several persons may have in one tract of land distinct interests which are the subject of taxation, such as land and mineral rights, or land and growing trees, or land and structures thereon. 27 Am. & Eng. Enc.

Law, 640. The chattel is a separate property from the land, taking neither its title nor its soil in itself, vested in a different person, carved out of the fee, a particular estate distinct as a life estate. Always has the common law regarded it as a distinct property, and of value as property. Is not the lease in this case a highly valuable asset of the corporation? Has it not a distinct property in it alone? Who can say a conveyance of coal in fee does not create a separate property, taxable as such? Why is not a long lease vesting the lessee with right to take coal not a valuable separate property? The surface owner has lost dominion over the coal. The lessee has complete dominion. Still each has a property, taxable distinctly, if the State elects to do so, because they are different properties, and each one ought to pay taxes on his own property." However, if there were any doubt of the purpose of the Legislature to tax oil or gas leases under section 4120, that doubt was removed by the enactment of section 4039, which was re-enacted in Acts 1906, p. 93, c. 22, section 20, and is in part as follows: "That it shall be the duty of all persons owning any real or personal property, mineral rights or standing (branded) trees of any kind whatever, on the lands of another, or any coal, oil or gas privileges, by lease or otherwise, or any interest therein, in this State, other than in the county in which the said owners reside, or if they should reside out of the State, to list the property for taxation personally or by authorized agent, in the county where situated, at the same time and in the same manner as is now required by law of resident owners," etc. It is the contention of appellee that the above statute is a penal, and not a taxing statute, and applies only to non-residents of the county or

State.   Such contention is manifestily unsound.   If
that were the case, the statute itself would be uncon-
stitutional upon the ground of unjust discrimination
and lack of uniformity.   The statute distinctly rec-
ognizes that the different kinds of property therein
enumerated are taxable.   Doubtless non-residents of
the county and State were claiming that their coal,
oil, and gas privileges held under leases were
personal property and taxable at their domi-
ciles, and in this manner were virtually
escaping taxation thereon.   The purpose of the Legis-
lature was to fix the situs for taxation of such prop-
erty in the counties where the lands covered by such
leases were situated.   In doing this it provided that
non-resident owners (speaking of both the county and
State) should list the property for taxation person-
ally or by authorized agent, in the county where
situated, at the same time in the same manner as
is now required by law of resident owners.   For
failure to do this a penalty is provided.   Manifestly,
therefore, if the listing of such property were not
required of resident owners, no penalty could be
inflicted upon non-residents.   That being the case,
we think the statute applies to all owners of such
property, whether resident or non-resident.

Having held that oil or gas privileges held by
lease or otherwise, or any interest therein, are tax-
able, it remains to be determined how the tax on such
property shall be apportioned between the lessor and
lessee.   This court in Mt. Sterling Oil & Gas Com-
pany v. C. S. Ratliff, Sheriff, etc. (not yet officially
reported), 104 S. W. 993, 126 Ky. —— 31 Ky. Law
Rep. 1239, recently laid down the rule that the
lessor or owner who, by the terms of the lease, re-
ceives one-sixteenth of the oil produced from the

leased premises, should pay taxes to that extent, and that it was immaterial by what name such property was called, whether personal property, a chattel real, incorporeal hereditament, or privilege, it was nevertheless property and as such was taxable under section 4039, Ky. St. That being the case, it necessarily follows that appellees are not taxable upon the whole value of their oil or gas privileges. From that value there should be deducted that portion thereof represented by the amount of oil reserved to the lessor. The remainder is taxable against the appellees.

Judgment reversed, and cause remanded for proceedings consistent with this opinion.