## Williamson v. Williamson, et al.

(Decided March 16, 1928.)

### Appeal from Pike Circuit Court.

1. Descent and Distribution.—Where in leasing mineral land, husband, instead of reserving royalty to be paid as mineral is extracted, makes outright sale of minerals for lump sum although payments of lump sum are deferred, consideration including deferred payments is personalty, and on his death surviving widow, under Ky. Stats., sec. 2132, is entitled to one-half.

2. Mines and Minerals.—Where right under instrument creating it does not confer privilege of taking mineral to exhaustion, it is not sale, but lease.

3. Mines and Minerals.—Where right under instrument creating it does not confer privilege of taking minerals to exhaustion, reserved royalty is in nature of rents and profits for use of land of which husband died seized, for purpose to which he devoted it before death, and rule applied in all cases where lease for purpose was executed by deceased husband, whether mines were opened pursuant thereto at time of death.

4.  Mines and Minerals.—Where instrument granted privilege of min-
    ing coal for 30 years, with right of renewal for additional 30 years
    after expiration of first term or until all minable coal was re-
    moved, and provided that lessee should not be required to pay
    rental after minable coal was removed, notwithstanding periods
    of lease hereinbefore mentioned, held, that it conferred mining
    privilege on lessee for period of 30 years with right to renew, and
    absolute title to coal in place was not conveyed.

5.  Descent and Distribution.—Where instrument did not convey ab-
    solute title to coal in place under land, but provided for royalty,
    and husband died after its execution, held, that, royalty accruing
    not being personalty but species of real estate in which surviving
    widow had dower, she was entitled to one-third of royalty accru-
    ing from operations of mines, under Ky. Stats., sec. 2132.

6.  Dower.—Where mines are opened pursuant to rights granted by
    widow and remaindermen after husband's death, she is entitled to
    interest on one-third of royalty during her lifetime, under Ky.
    Stats., sec. 2132.

O. T. HINTON, JOHNSON, AUXIER & HINTON, and GOODY-
KOONTZ & SLAVEN for appellant.

HARMON, FRANCIS & HOBSON, and RANDOLPH BAIS for
appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

John B. Williamson died on August 14, 1923, a resi-
dent of Pike county, and intestate. He left surviving him
his widow, the plaintiff below, and appellant here, Edna
B. Williamson. They had no children, and the appellee
Parlee Williamson was the mother of the deceased, John
B. Williamson, and his only surviving heir. Since the
pending of this action she has died, and a revivor was
duly made in the name of her successors in title and who
are the other appellees herein. Mr. and Mrs. Williamson
on July 1, 1918, executed a coal-mining lease conveying
the right to mine coal under about 130 acres of land,
owned by decedent at that time in Pike county, to one S.
H. Goodloe. Before his death mines were opened on the
leased tract in the exercise of the right conferred by the
lease and were in operation at the time of his death. No
dower has ever been assigned to plaintiff in the *surface*
of the leased tract. This declaratory judgment action
was filed in the Pike circuit court by plaintiff, the widow
of decedent, against his mother, his only surviving heir,
to determine the rights of plaintiff in and to the royalty

accruing under the lease. In her petition plaintiff averred, in substance that, under the terms of the written instrument herein referred to as "the lease," Goodloe, who was denominated therein as "lessee," was conveyed the absolute fee-simple title to all of the coal in place under the leased land, and that future royalties were but a method adopted by the parties for the payment of the consideration therefor, and that plaintiff was entitled to receive absolutely one-half of such royalties as they became due and payable in the future, under the provisions of section 2132 of our present Statutes, which gives to the surviving widow an estate for her life in one-third of all the husband's dowable real estate and "an absolute estate in one-half of the surplus personalty" left by the husband.

That contention is bottomed upon the theories, (a) that the particular written instrument involved was, in substance and effect, an absolute conveyance of all the coal under the land, and (b), that if mistaken in theory (a), then, under the terms of the writing, the landowner, John B. Williamson, thereby sold and converted (under the doctrine of equitable conversion) all of the coal that the owner of the privilege might mine from the land under the terms of the written instrument, and, being so converted, the coal so mined became personal property as of the day of the execution of the writing, and that the surviving widow was entitled to one-half of the royalty as it became due, since it should be distributed as personalty because of such alleged conversion. The court rejected both theories (a) and (b), and treated the royalty as real estate of which John B. Williamson died seized, and construed the instrument as conveying only a privilege to the lessee to take the mineral from the land, and that the royalties retained were in the nature of rents and income, and that plaintiff as surviving widow was entitled to one-third thereof for and during her life, and that the other two-thirds belonged to the only heir of the decedent (defendant, his mother), and to reverse that judgment plaintiff prosecutes this appeal.

If, instead of reserving a royalty to be paid as the mineral was extracted, there had been an outright sale of it for an agreed lump sum by the landowner, there could be no doubt of the correctness of theory (a), although the payments of the lump sum consideration were

deferred through a series of years. In that event the consideration, including the deferred payments, would be personalty, and to which the surviving widow under the statute would be entitled to one-half. But there is, perhaps, no single question upon which there is a greater diversity of opinion among the courts than the one presented by theory (b) when the right to extract the mineral, even to exhaustion, is to be paid for by royalties measured by the quantity of mineral when and as extracted. Some of the cases holding that a privilege to mine with the right to extract the mineral to exhaustion constitutes a sale of the mineral, although paid for by royalties as and when the mineral is extracted, are Delaware, L. & W. R. Co. v. Sanderson, 109 Pa. 583, 1 A. 394, 58 Am. Rep. 743; Hope's Appeal (Pa.) 3 A. 23; Montooth v. Gamble, 123 Pa. 240, 16 A. 594; In re Lazarus' Estate, 145 Pa. 1, 23 A. 372; Hobart v. Murray, 54 Mo. App. 249; National Coal Co. v. Overholt, 81 W. Va. 427, 94 S. E. 735; Feather v. Baird, 85 W. Va. 267, 102 S. E. 294, and others found in those opinions. But in none of those cases was the question as to the widow's *dower* right in and to the royalties involved, but only other questions growing out of a severance of the mineral and surface estates.

We have held in a number of cases that a leasehold right to extract minerals was for many purposes a severance of the two estates as long as the mineral right continued. Some of them are Wolfe County v. Beckett, 127 Ky. 252, 105 S. W. 447, 17 L. R. A. (N. S.) 689; Kennedy v. Hicks, 180 Ky. 562, 203 S. W 318; Scott v. Laws, 185 Ky. 444, 215 S. W. 81, 13 A. L. R. 369, and others cited therein, and still others rendered since the last one. This is especially true for the purposes of taxation, and which is recognized in this jurisdiction by section 4039 of our present Kentucky Statutes.

But whether theory (b) embodies a correct principle of law in the adjustment of *dower* rights of widows in and to mineral royalty where the right is given to the exhaustion of *all* of the involved minerals need not be determined by us in this case, since we have concluded that the writing herein, conferring the mineral privilege, gave no such right to Goodloe, but, on the contrary, he sustained only the relation of lessee in and to the coal under the Williamson tract of land. The doctrine of the

Pennsylvania cases, supra, was largely modified by the Supreme Court of that state in the case of Denniston v. Haddock, 200 Pa. 426, 50 A. 197, and which was later followed by that of Coolbaugh v. Lehigh & Wilkes-Barre Coal Co., 213 Pa. 28, 62 A. 94, 4 L. R. A. (N. S.) 207. In those cases prior Pennsylvania opinions were reviewed, and it was held that the question as to whether there was an absolute grant of the mineral in place was one to be governed by the intention of the parties as gathered from the instrument creating the right, and many courts, including this one, hold to the theory that where the right under the terms of the instrument creating it does not confer the privilege to take the mineral to exhaustion it is not a sale, but a lease, and that the surviving widow's rights to the royalty in such leases, executed before the husband's death, is to be governed accordingly. In such cases the reserved royalty is held to be in the nature of rents or profits for the use of the land of which the husband died seized for the purpose to which he devoted it before his death, and which rule applies in all cases where a lease for the purpose was executed by the deceased husband, whether or not mines were opened pursuant thereto at the time of his death. Domestic cases so holding are Daniels v. Charles, 154 Ky. 232, 157 S. W. 32; Id., 172 Ky. 238, 189 S. W. 192; Saulsberry v. Saulsberry, 162 Ky. 486, 172 S. W. 932, Ann. Cas. 1916E, 1223; Crain v. West, 191 Ky. 1, 229 S. W. 51; and Goosling v. Pinson, 198 Ky. 57, 248 S. W. 248.

In the contract herein granting the privileges to Goodloe there is contained expressions indicating an intention to confer the privilege of mining to exhaustion, and some of the language employed indicates an absolute grant; but all of it is necessarily confined and limited to the prescribed terms measuring the duration of the privilege, and which are:

"For a period of 30 years from the date hereof, with the right of renewal of this lease for an additional period of 30 years after the expiration of the first term mentioned or until all of the minable and merchantable coal upon said land has been mined and removed, provided the lessee shall give to the parties of the first part 12 months' notice before the expiration of the first term of his desire to renew after the expiration of the first period."

It is provided, as is usual in such instruments, for a minimum royalty, and section 20 of the contract says:

"Nothing herein contained shall be construed to mean that the lessee shall be required to pay any annual minimum rental after all the minable and merchantable coal has been removed from the premises, notwithstanding the periods of lease hereinbefore mentioned."

That section, very clearly, to our minds, indicates that it was the intention and purpose of the parties to the contract, in employing the language "or until all of the minable and merchantable coal upon said land has been mined and removed," to provide for a limitation of the two periods of 30 years therein mentioned, and not as extending the privilege beyond those periods in the event that the option to renew was exercised at the expiration of the first one. The purpose was by the insertion of that limiting clause to relieve the lessee of the obligation to pay the stipulated minimum royalty if all the merchantable or minable coal was exhausted before the expiration of either of the named periods. So that, aside from other considerations, it is manifest that it was the intention and purpose to confer the mining privilege on the lessee for only a period of 30 years with the right on his part to renew or extend it for another similar period if he chose to, but upon condition that he should give the lessors 12 months' advance notice of his purpose to do so. Under such circumstances the very decided weight of authority is in accord with our domestic cases, supra, to the effect that the contract did not create a sale of the coal that might be mined during either of the two expressed terms of the lease, should the extension be obtained, and, being so, no equitable conversion of the mineral in place was effected so as to entitle a surviving widow to one-half of future royalties under the provisions of the section of our Statutes, supra.

In the two Daniels and the Crain cases, and in Gerkins v. Kentucky Salt Co., 100 Ky. 734, 39 S. W. 444, 19 Ky. Law Rep. 130, 66 Am. St. Rep. 370, we held that a life tenant, or the owner of a dower estate, had the right to work opened mines on the portion of land allotted to her as dower, to exhaustion, and which included the right to *all* of the stipulated royalty therefrom, and which was

true although no mines were opened before the death of the husband, provided he devoted his lands to such purposes before his death by executing a proper lease therefor. The instant case, however, does not involve the question as to the right of a widow to the minerals under a *specific* boundary of land assigned to her as dower, but to her aliquot part of the *entire* royalties arising from minerals extracted from under the entire tract. The Crain case, supra, held that before assignment of dower she was entitled in opened mines, or prior leased land, to one-third of the entire royalty accruing from the whole of the land, but her right upon final assignment of the dower was expressly left open. We can see no difference in principle between the right of the surviving widow to all the royalty accruing from mines located upon her specific allotted surface dower, and one-third of the entire royalty accruing from the entire tract when there has been no surface allotment of dower, as is true in this case, and the authorities so far as we have been able to ascertain construe the royalties accruing under contention (b) not to exhaustion, as a species of realty right in which the widow is entitled to be endowed for her life in one-third thereof. The cases so holding will be found in the annotation to the case of Eager's Guardian v. Pollard, 194 Ky. 276, 239 S. W. 39, 43 A. L. R. 808. In the last publication beginning on page 813, the annotator in stating the general rule says:

"In harmony with the rule as to other minerals, a tenant for life, being entitled to profits of the land, is entitled (to the extent of the life interest) to the royalties of wells that were opened and in operation when the life estate commenced, and not merely to the income from such royalties."

In the same annotation, and on page 814, it is pointed out that the widow is entitled to the same dower interest in mines or wells "opened after commencement of life estate under authority previously granted." It would serve no useful purpose for us to incumber this opinion by inserting the large number of cases contained in that annotation, since they may be readily found by consulting the volume of A. L. R. in which the annotation appears. See, also, to the same effect, the text in 21 C. J. 946, as to the right of the surviving widow in and to *rents* accruing from the leased real property during the

continuance of her dower estate and which were provided for by her deceased husband in his lifetime. The rights of the widow as life tenant under cases like this, where the separate mineral estate was created by the husband before his death, are altogether different from her rights in and to royalty from mines opened pursuant to rights granted by herself and the remaindermen after her husband's death. In such cases she is entitled to the *interest* on one-third of the royalty during her life, and which was the question involved in the recent domestic case of Lemaster v. Hudson, 214 Ky. 467, 283 S. W. 439. In that case the leasing privileges were given by a contract executed by the widow and remaindermen after the husband'e death, and, following the doctrine as laid down by the text in 21 C. J. 947, par. 86, and as held in the case of Barnes v. Keys, 36 Okl. 6, 127 P. 261, 45 L. R. A. (N. S.) 178, Ann. Cas. 1915A, 515, we determined the extent of the rights of the widow in the royalty arising from such an executed lease to be only the *interest* on one-third thereof during her life. However, the text in the last reference to Corpus Juris says that:

"A life tenant may work a mine, quarry, or well, opened before the creation of his estate even to exhaustion; and not only for his own use but for profit."

Coinciding with the views as above expressed are the annotations on pages 1102 and 1109 of 36 L. R. A. (N. S.), and the texts in 19 C. J. 469, par. 39, and 9 R. C. L. 579, par. 22. The text in the latter publication says:

"Accordingly it has been held, on the one hand, that if they (mines) were opened during the husband's life, or by the heir before assignment of dower, the widow is entitled to dower, which consists of one-third of the royalty or profits of the workings; but she has not the right to open unopened lands or quarries."

Supporting that text are the cases of Lenfers v. Henke, 73 Ill. 405, 24 Am. Rep. 263; Priddy v. Griffith, 150 Ill. 560, 37 N. E. 999, 41 A. S. E. 397; Hendrix v. McBeth, 61 Ind. 473, 28 Am. Rep. 680; Billings v. Taylor, 10 Pick. (Mass.) 460, 20 Am. Dec. 533; Crouch v. Puryear, 1 Rand. (Va.) 258, 10 Am. Dec. 528.

Summarizing, our holdings on the points involved as arising upon the facts presented by the record are, (1) that the contract here involved does not convey an absolute title to the coal in place under the leased land; and, that being true, (2) that the royalty accruing from the operation of the mining privileges thereby created is not personalty, but a species of real estate, and to which plaintiff as the surviving widow of her husband is entitled to dower therein as income and profits from real estate, and (3) that, since there has been no allotment of any particular portion of the real estate, she is entitled to dower in one-third of the royalty accruing from the operations of the mines in the entire tract of land.

The circuit court having so held, its judgment is affirmed.

The whole court sitting.