# Millikin & Co. *v.* Carmichael.

*Bill in Equity to enjoin Trespasses.*

1. *Lease of part of homestead for turpentine purposes; not necessary for it to be signed and separately acknowledged by the wife.*—A written lease granting to the lessees the turpentine privileges of lands which constitute a part of the lessor's homestead, and giving the right of ingress to and egress from such land, for the purpose of boxing the pine trees standing thereon and taking from them gum for the manufacture of turpentine, is not such a conveyance or alienation of the homestead as requires the signature of the lessor's wife and her separate acknowledgment, in order to give validity to such an instrument.

APPEAL from the Chancery Court of Geneva.

Heard before the Hon. WILLIAM L. PARKS.

The bill in this case was filed by the appellants, Millikin & Company, against D. C. Carmichael.

It was averred in the bill that on December 8, 1899, one Franklin, the owner of certain lands, which he occupied as a homestead, executed a lease to the complainants granting to them the turpentine privileges in the pine trees standing upon said lands for a period of three years from the time said trees should be boxed. That in said lease there was granted the right of ingress to and egress from said lands and the right to cut and box said trees for turpentine privileges, and the right to use the land for the management of their business in making turpentine and rosin from the gum of the pine trees. That this lease was signed by both Franklin and his wife and was acknowledged by both of them, the acknowledgment of the wife being separate and apart from the husband and in the form required for the conveyance of a homestead. It was then averred in the bill that the respondent, D. C. Carmichael, asserted some rights or claim to the turpentine privileges in the trees

standing upon said lands, and to box said trees and gather the gum from said boxes, and that he was trespassing upon the rights of the complainants, by boxing the trees and gathering the gum and manufacturing it into turpentine and rosin. The prayer of the bill was that the defendant be enjoined from the commission of such trespasses.

The defendant filed an answer to the bill denying that he was trespassing upon any of the property rights of the complainants, and then averred that on June 1, 1891, the said Franklin executed to him a lease, by which he granted to the defendant the right of ingress to and egress from the lands described in the original bill, and to the rights, appurtenances and privileges to enter upon said lands for the purpose of boxing said pine trees and gathering the gum therefrom for the manufacture of turpentine and rosin, and that in entering upon the lands as averred in the complainant's bill he, the defendant, was in the exercise of the rights granted to him under said lease from said Franklin. The defendant asked that his answer be taken as a cross bill, and that the complainant be enjoined from entering upon said lands, boxing said trees and taking the gum therefrom. There was attached to the answer and cross bill a lease from said Franklin to Mathis & Company, which was executed on June 1, 1891, and was signed by Stephen Franklin alone and attested by one witness; the lease, granting the turpentine privileges as averred in the answer "for a term of three years from the date of boxing."

It was shown by the evidence that the complainant entered upon the lands and boxed the trees in January, 1900; that prior to that time no one had entered upon said lands and boxed said trees for turpentine purposes, but that in May, 1900, the defendant who had not, theretofore, boxed any of the trees, entered upon said lands and exercised the rights granted to him under his lease. The other facts of the case are sufficiently stated in the opinion.

Upon the submission of the cause on the pleadings and proof, the chancellor decreed that the complainants were not entitled to the relief prayed for and ordered

their bill dismissed. From this decree the complainants appeal, and assign the rendition thereof as error. ·

SANDERS & McGRIFF, for appellants.—It has been decided by this court that leases of the sort here involved are conveyances of realty, and as such must be recorded so as to protect creditors and subsequent purchasers. *Millikin v. Faulk,* 111 Ala. 658.

The statute regulating the manner of conveying homestead lands in Alabama is very much like the statute of Mississippi regulating such conveyances and alienations of such property; and it has been decided by the Supreme Court of the latter state that standing trees are a part of the realty, and that a sale of such trees standing on the homestead, the wife not joining in the conveyance by the husband, is absolutely void.—*McKenzie v. Shows,* 12 So. Rep. 338; s. c. 25 Amer. St. Rep. 654; *Pritchett v. Davis,* 101 Ga. 236; s. c. 65 Am. St. Rep. 298; *Goody v. Gress Lumber Co.,* 82 Ga. 798; *McGee v. Wilson,* 111 Ala. 615; *Millikin v. Carmichael,* 134 Ala. 623.

H. A. PEARCE and R. D. CRAWFORD, *contra.*—A leasehold interest in lands in a chattel real, and personal property.—*First Nat. Bank v. Consolidated Electric Co.,* 97 Ala. 466.

A lease upon land is not a conveyance. In its ordinary acceptation, and without the aid of statute, it expresses a tenancy for years in land, while a conveyance is associated with a transfer of the legal title.—7 Am. & Eng. Encyc. of Law, (2d ed.), p. 478, note 6.

TYSON, J.—The matter of controversy between the parties arises out of their respective claims to box and take from pine trees gum or rosin, standing upon the homestead of one Franklin. The complainants predicate their right upon a written instrument of date of December 8, 1899, granting to them the right of ingress and egress upon the land for the boxing of the trees and taking from them the gum for the purpose of manufac-

turing turpentine for a designated period of time which was executed by both Franklin and his wife and properly acknowledged by both. The acknowledgment of the wife is in the form required for conveyances of homesteads.

The respondent asserts his right under a similar instrument, executed by Franklin, the husband, alone on November 24, 1890, and recorded June 1, 1891.

From this statement it will readily be seen that the question presented is, whether the signature of the wife and her separate and apart acknowledgment is necessary to the validity of the instrument under which the respondent claims. If not, it is entirely clear that his right is superior to those of the complainants.

Te statute provides that, "no mortgage, deed or other conveyance of the homestead by a married man shall be valid without the voluntary signature and assent of his wife, which must be shown by her examination, separate and apart from him, before an officer authorized by law to take acknowledgments of deeds, and the certificate of such officer upon or attached to said mortgage, deed or conveyance," etc.—Section 2034 of the Code. This statute simply restrains and limits the husband's power of alienation in whom the title to the homestead is vested, which is a mere incident of his ownership. *McGuire v. Van Pelt,* 55 Ala. 353. He is the owner of it and has unlimited dominion and power over it so far as the use to which it may be put. He may cultivate it, if it is susceptible of cultivation or not as he pleases and in such manner as he may choose. He may, if it is timber land, fell the timber for the purpose of making it suitable for cultivation, or for that matter he may destroy the timber growing upon it or he may sell it after he has felled it; and this he may do although the doing of it may destroy the market value of the land.

He has the undoubted right to extract from the pine trees upon it the gum or rosin without molestation or hindrance; or to take from the trees the burrs or needles for the purpose of sale or otherwise.

Should there be upon it an orchard of fruit trees, who doubts his unqualified right to gather the fruit and dis-

pose of it as he may choose? Or should minerals exist in or upon it, who can question his right to mine or dispose of them? The crops he may raise upon it are his and these he may mortgage or sell without his wife's assent. In short, being the owner, the use to which he may put the land, and everything attached to it and a part of it, is illimitable and uncontrolable.

Assuming for the purpose of this case, as seems to have been done in *Millikin v. Carmichael*, 134 Ala. 623, that the instrument under which the respondent claims is a conveyance of an interest in the land (a proposition not decided), the principle that must control is found in 15 Am. & Eng. Encyc. of Law, (2d ed.), p. 674. It is there said: "The authorities are not uniform as to the right of the husband alone to lease the homestead premises, for this right has been both affirmed and denied. The most satisfactory rule would seem to be that the husband alone may lease the homestead lands for purposes not interfering with the use of the property as a homestead, but cannot do so when the lease interferes with such possession and enjoyment of the premises by the wife."

Mr. Thompson in his work on Homestead and Exemptions (§ 471) states the same rule in this language: "But the husband may, without the consent of the wife, give leases of homestead lands which do not interfere with their use and occupancy as a homestead, and also licenses to cut timber, quarry stone, remove minerals and the like," etc.—See also Waples on Homestead and Exemptions, § 433; Smyth on Homestead and Exemptions, § 303; *Harkness v. Burton*, 39 Iowa, 101; *Coughlin v. Coughlin*, 26 Kan. 116.

Under this rule the rights of the husband as owner are fully protected and conserved and no right of the wife violated.

In the absence of averment and proof that the exercise of the privileges granted to the respondent interfere with the use and occupancy of the land as a homestead, it cannot be affirmed that it does. It is not even shown that the extracting of the gum or rosin from the trees

deteriorates their value much less diminishes the value of the land or otherwise impairs its value as a homestead; *non constat,* its value may be enhanced and its use and occupation as a homestead rendered more valuable. The case of *McKenzie v. Shows,* 70 Miss. 388, cited by appellants, involved the validity of a conveyance by the husband of all the timber of a designated size growing on the land, no time being fixed for its removal. The question presented was whether the conveyance was an incumbrance of the homestead. The court held that growing trees are a part of the realty; that the conveyance was an incumbrance and that the wife should have joined in it. Stress was laid in the opinion upon the fact that there was a wholesale conveyance of the timber with large diminution in value of the homestead. The case of *Pritchett v. Davis,* 101 Ga. 236; s. c. 65 Am. St. Rep. 296, also cited and relied upon is very much like the Mississippi case.

The point involved in *Millikin v. Faulk,* 111 Ala. 658, was whether the lease, which was of the same character as these, was an unconditional conveyance of real property within the meaning of section 1005 of the Code. It was held that it was. Neither of these cases are in point. What we have said in no wise conflicts with *McGhee v. Wilson,* 111 Ala. 615, which holds that the conveyance of a right of way to a railroad through the homestead in which the wife does not join is void. The distinction between that case and this one is so apparent, it is unnecessary to point it out.

Affirmed.