HANCOCK COUNTY v. IMPERIAL NAVAL STORES COMPANY.

[47 South. 177.]

1. SUPREME COURT PRACTICE. *Appeal. Disposition of case.*

Where the sole question before the trial court was whether a right to some of the products of land was taxable as land, and it was decided in the negative, the supreme court on appeal cannot reverse the judgment because the right was taxable as personalty.

2. TAXATION. *Real property. License. Resin.*

A license to enter upon land for a term and extract resin from the pine trees thereon is not such an interest in the land as to be taxable as real estate.

3. EVIDENCE. *Judicial notice. Common knowledge. Turpentine business.*

The courts do not know judicially that the boxing of pine trees for turpentine destroys their value as timber trees, but they do have judicial knowledge that the turpentine business was in vogue in the piney-woods sections of the country before 1831.

4. LICENSES. *Real property license. Rights.*

An instrument in writing, although it be called a lease, by which one of the parties "bargains and leases" to the other the pine timber on designated land "to be used for turpentine purposes" for a specified term, does not pass title to the crude resin or turpentine until there has been a severance of it from the trees.

5. LANDLORD AND TENANT. *Nature of a lease.*

No particular form of expression is necessary to constitute a lease, and whatever expressions manifest the intentions of the parties to be that one shall divest himself of the possession of his property and that the other shall take it for a certain period of time are sufficient, and will amount to a "lease" for the specified time as effectually as if proper words had been used for that purpose.

6. MINES AND MINERALS. *Conveyances. Leases. Sales.*

There is a distinction between a grant of a right for a term of years to take minerals from certain premises, coupled with the right of ingress and egress to do so, and an outright sale of the minerals in place; the latter amounting to a conveyance of an interest in the land itself.

7. TAXATION.  *Real property.  Interests taxable as real property.*

An instrument reciting that an owner "bargains and leases" to
another the pine timber on described land, to be used for tur-
pentine purposes for a specified term from date of cutting boxes
in the trees, and that the latter agrees to pay a specified sum per
one thousand boxes for "said lease," etc., whether a lease or
license, does not grant any interest in the land as land, but gives
a mere irrevocable right during the life of the contract to enter
on the land and take from the pine trees the crude resin or tur-
pentine, and the right is not assessable as land.

FROM the circuit court of Hancock county.

HON. WILLIAM R. HARDY, Judge.

The Naval Stores Company, appellee, was assessed on its
lease or license, set out in the opinion of the court, to take resin
from pine trees for turpentine purposes upon a large body of
land as if its right therein were real estate; it protested and on
the refusal of the board of supervisors to relieve it from the as-
sessment it appealed to the circuit court. From a decision in
the court below in appellees' favor vacating the assessment, Han-
cock county, appellant, appealed to the supreme court. The
facts of the case are fully stated in the opinion of the court.

*B. P. Harrison,* district attorney, and *R. V. Fletcher,* attor-
ney general, for appellant.

It is useless to deny that the Alabama case cited by counsel
from 35 South. 38 supports the conclusion reached by the court
below. But this conclusion of the Alabama court is based upon
the idea that a lease such as the record discloses is a mere license
and our court has repudiated this contention. *Gex v. Dill,* 86
Miss. 10, 38 South. 193. In the case cited the able counsel for
appellant argued that a turpentine lease such as the case at bar
presents was a mere license and not an interest in the lands,
but this contention is summarily disallowed by this court. A
lease of this kind cannot be held to be an estate in the land for
one purpose, and a mere license for another. If it is a valid
and subsisting interest in the land, it is taxable as such under

the statute. The very language of the lease shows that it was a sale of timber.

It is a matter of common knowledge that the boxing of a pine tree for turpentine purposes destroys the value of the tree to a certain extent, stops its growth, and impairs its value as timber. In other words, this lease amounts to a sale of the sap of the tree, its very life and vigor. Now, the tree is, under all the authorities, a part of the realty and any interest in the trees is taxable as part of the realty.

This appellee, after the execution of this lease, owned a part of the tree. He owns the resin or turpentine contained therein. This is as much a part of the tree as the trunk, or roots or branches. It is difficult to see why this is not a part of the realty as much so as if he had purchased the entire tree. This case is not analogous to those where the lessee acquires the right to gather the fruit from an orchard; for such a use of the premises does not impair or injure the permanent value of the property.

It will not do to argue that the land upon which these pine trees are growing and the trees themselves are already assessed for taxes at their real value, and that the taxation of this turpentine lease would be double taxation. It is not conceivable that a piece of standing timber encumbered with a turpentine lease would be as valuable as the same property not so burdened. When the turpentine privilege was parted with, there passed to the grantee for a valuable consideration a substantive and substantial part of the realty, having a definable and determinable market value, and to this extent the value of the estate is diminished. Further if this lease is an interest in the realty, it should be assessed to the real owner, regardless of any over-assessment that may have been imposed on some one else.

The distinction between a mere license to enter, and a sale of some substantial part of the realty is well illustrated and pointed out in the case of *Coal Co. v. Baker,* 135 Ill. 545, where it is held that the interest conveyed by a sale of coal with privilege to enter and mine is an interest in the land and taxable as such.

It has been held that a grant of a right to shoot over land and to take away a part of the game killed is a grant of an interest in land and within the statute of frauds. *Webber v. Lee,* 9 Q. B. D. 315.

The distinction between a mere license and an interest in the land is clearly pointed out in the well reasoned case of *Heywood v. Fulmer,* 18 L. R. A. 491, and it is there held that "the exclusive right to all gravel and sand for a certain year named and excluding all other parties from said premises is an interest in the land, and not a mere license." See also the list of cases cited in the notes to that case. These cases may present some apparent conflict, but a careful examination will show that they turn upon what is the fundamental question in this case, viz: Does the conveyance herein described pass to the grantee some definite and permanent interest in the land, the effect of which will be to decrease its value? Has the grantor parted with something which is a substantial part of the realty? It seems to me that there can be but one answer to this question.

If this lease is not an interest in the land and taxable as such is it not personal property, and therefore taxable? Certainly it partakes of the nature of property. It has a certain value, is the subject of sale, is susceptible of ownership apart from the land. If property, it should be taxed. If the court should hold that it is personal property, this case should not be reversed for "the law taxes the property, and is not to be defeated by its being put on one assessment roll rather than another." *Tunica County v. Tate,* 78 Miss. 294, 29 South. 74.

*W. J. Gex* and *R. W. Stontz,* for appellee.

The licensee has no property in the product of the trees until he has extracted the crude turpentine from the trees. There is nothing in the license or lease requiring the licensee to exercise his right. Certain it is that specific performance could not be had, for in the event he refused to perform, the court could not carry on a business for him, and moreover, the license, lease or contract does not provide that he shall carry on the business.

The licensee has no property in the tree, or in the product thereof, until he has extracted the gum from the tree and reduced it to personal property, which requires much labor on his part.

If this license can be assessed, for what length of time can you assess it? Certainly not for ten years, because the licensee is only granted the right to remove the crude turpentine or gum for three years. The licensee or lessee could not be assessed for three years as he may not see fit to exercise his right under the license.

We are familiar with the authorities in this state to the effect that one party may own the timber on a certain tract of land and that another may own the fee to the same lands, and that each must be assessed with what he owns; but, of course, there is no similarity between those cases and the principle involved in the case at bar; in the one case, both the owner of the timber, before it was severed from the land and the owner of the lands have an interest in the lands, which is a known quantity and perceptible of ownership separately, while in the other case, the licensee has no interest in the trees or the lands on which they grow, he has nothing but a naked right to go on the lands for the purpose of gathering the annual crop from certain trees for three consecutive years, an unknown quantity, imperceptible of any sort of definite valuation.

Though the turpentine business has been carried on in this state for over fifty years, this is the first time an attempt has been made to assess said licenses or leases.

In 27 Am. & Eng. Ency. of Law (2d ed.) 64, it is stated: "License to use land.—A license to go on the land and sever and remove the product thereof has been held to be not such an interest in land as is taxable as real property."

The supreme court of Alabama in a case like this, said: "The turpentine was the only thing to be acquired by the lessees from the timber and land. Under the lease, the land and timber remained the property of the lessors. The sole object of the

lessees in entering into the contract was to extract from the trees the crude turpentine, as a product of the land, leaving the trees and the soil to the lessors the owners of the land, after the expiration of the lease. The court erred in giving the general charge for the state, and in refusing a like charge for the defendent. Reversed and remanded. *Ashe Carson Co. v. State*, 35 South. 38.

In the case of *Orrell v. Bay Manufacturing Co.*, 83 Miss. 824, 36 South. 561, it was held that the sale or grant of a turpentine right or license was not an alienation of the free-hold such as would prevent a homesteader from proving out his claim under the homestead laws of the United States.

WHITFIELD, C. J., delivered the opinion of the court.

This case was tried by agreement between the parties before the judge, a jury being waived, upon an agreed statement of facts. The agreed statement of facts is in substance as follows:

That the plaintiff possessed a turpentine license or right, evidenced, in the only parts necessary for our consideration, by the following instrument:

"John Smith to Imperial Naval Stores Co., State of Mississippi, Hancock County. This agreement, made and entered into on this the 23d day of May, A. D. 1902, by and between the Imperial Naval Stores Company, of Hancock county, Mississippi, and the said John Smith of said county and state, witnesseth as follows, to-wit: The said John Smith hereby bargains and leases to the Imperial Naval Stores Company, all the pine timber on the following described land, to-wit:  *  *  *  —in Hancock county, Mississippi, to be used for turpentine purposes for the term of three years from date of cutting boxes; said lease not to exceed ten years from date. The said Imperial Naval Stores Company agrees to pay $12.50 per thousand boxes for said lease; the sum of $500 being paid, and said Imperial Naval Stores Company to pay the balance when trees are boxed and counted. Given under my hand and seal, this the 23d

day of May, A. D. 1902. John J. Smith. [Seal]. Witnesses: Thos. Haithcoke. Joseph Davis.

"State of Mississippi, Hancock county. Personally appeared before me, J. P. Mauffray, a member of the board of supervisors of the county of Hancock, and said state, the within named Jno. J. Smith, who acknowledged that he signed and delivered the foregoing instrument on the day and year therein mentioned· Given under my hand this the 11th day of September, A. D. 1902. J. P. Mauffray. M. B. S."

That said lease, license, or grant, by whatever words it may be called by the court, was duly assessed at the sum of fifty cents per. acre on said turpentine right, for every acre of land embraced in said lease, by the assessor of Hancock county, on the land roll of said county, as an interest in the said lands, and that the assessment roll was duly approved by the board of supervisors at a regular meeting thereof, all of which assessment, equalization, and approval of said assessment concerning said turpentine rights were had over the objection of said plaintiff. That the said plaintiff is a foreign corporation and is a corporation of the state of Louisiana, with its principal place of business in New Orleans. · That the said lands described in said lease were duly and regularly assessed at their true and full value, the said turpentine right thereon not having been taken into consideration as affecting the actual assessable value of said lands, which lands were assessed at the same valuation they would have been assessed at had the said turpentine right not existed. That the purpose of presenting this cause, is to have the court decide two questions: First, is a turpentine license, right, or lease an interest in lands, and so assessable? and, second, if not, is such license or right assessable at all, and, if so, is a nonresident corporation assessable with said right or lease under the laws of this state?

It is conceded that this last proposition is not necessarily involved in this record. The court below held that the instrument passed no interest in the land as land and that it was not assess-

able. It is conceded in the case that the land embraced in the instrument was assessed at its full value as land, and that the pine trees were in that assessment treated as part of the land both belonging to the plaintiff. In treating of a precisely similar lease the supreme court of Alabama in the case of *Ashe Carson Co. v. State*, 138 Ala. 108, 35 South. p. 38, said: "The statute above quoted, under which it is claimed the state has the right to tax the interest the lessees acquired under their lease as an interest in land, is one which must be strictly construed against the state. The purpose of the statute was to tax the ownership of the land, and when the title to some substantial part of the land is vested in one person, and the general title is vested in another, the interests are taxable separately. It does not extend to a person who has a mere right to go upon land of another to derive some profit therefrom. Construing the statute most strictly against the state (Cooley on Taxation, 266), it would seem that the right given to the lessees by the lessors under their contract to take crude turpentine from standing trees was not a special possessory interest in the land itself within the meaning of the statute. *Kennedy S. & C. Co. v. Sloss Iron Co.*, 137 Ala. 401, 34 South. 372. The turpentine was the only thing to be acquired by the lessees from the timber and land. Under the lease the land and timber remained the property of the lessors. The sole object of the lessees in entering into the contract was to extract from the trees the crude turpentine as a product from the land, leaving the trees and the soil to the lessors, the owners of the land, after the expiration of the lease." The statute referred to by the supreme court of Alabama is section 3911, subd. 1, of the Code of 1896, which provides as follows: "Every separate or special interest in any land, such as mineral, timber, or other interest, when such interest is owned by a person other than the owner of the surface or soil," is subject to taxation.

The instrument in this Alabama case is substantially identical with the instrument in this case, and the decision of the Alabama supreme court is squarely in point here. No interest

in the land passed by this instrument, and, by whatever name it may be called, it was nothing but the grant of a right to take the crude turpentine from the trees during the period stipulated for at the consideration named. The crude resin or product of the tree might itself be taxed as personal property when severed from the tree, or the turpentine made from such crude product itself be taxed as personal property; but the intrument conveys no interest in the land as land. Now, the precise point presented for our determination is whether the right granted by this instrument was taxable as an interest in the land itself at fifty cents per acre. It was so assessed on the land roll, it was dealt with by the court below in that view alone, and consequently the point made by the learned attorney general, that if we should hold that the crude products are taxable as personal property then this judgment should not be reversed under the principle announced in *Tunica County v. Tate,* 78 Miss. 294, 29 South. 74, is not tenable on the point presented by this record. It is true, as held in that case, "that the law taxes the property, and is not to be defeated by its being put on one assessment roll rather than another;" but dealing, as we must on the face of this record, with an assessment on this right on the land assessment roll as an interest in the land, the only question for decision here is whether that particular judgment is correct. All the crude products obtained from these pine trees, or all the turpentine made from them, certainly should be assessed to the appellee, and taxes paid on them by the appellee, just as they would be paid on any similar personal property; "but that is another story."

In 27 Am. & Eng. Ency. of Law (2d Ed.) at page 642, it is said that "a license to go on land and sever and remove the products thereof has been held to be not such an interest in the land as is taxable as real property," and in the note thereto certain authorities are cited, including *Ashe Carson Co. v. Sate, supra.* We think this is the correct announcement of the law on this point. In the case of *Millikin v. Carmichael,* 139 Ala.

226, 35 South. 706, 101 Am. St. Rep. 29, the Alabama supreme court held that a turpentine lease was valid without the wife's having joined in the acknowledgment of the lease, though the subject-matter, the land, was a homestead. In other words, the effect of that decision was squarely to hold that such an instrument grants merely the right of user of the homestead for a particular turpentine purpose, as distinguished from an alienation of any interest therein as a homestead. There were two such alleged leases in that case, one with such acknowledgment and one without it, and the instrument first executed was the one without the acknowledgment, and the one which the court upheld in a contest between the two. The case of *Gex v. Dill,* 86 Miss. 10, 38 South. 193, in no way conflicts with this view. It held nothing except that an instrument like this was not revocable by the death of the grantor when it was based upon a valuable consideration. In the case of *Orrell v. Bay Mfg. Co.,* 83 Miss. 842, 36 South. 561, 70 L. R. A. 881, we held that an instrument like this does not pass or alienate any interest in the land as land; but that case considered section 2291, Rev. St. U. S. (U. S. Comp. St. 1901, p. 1390) which declared that "no part of such land has been alienated," etc., and our holding, perfectly sound, and which we now reaffirm, was that such an instrument as this is no alienation of any part of the land as land. That case was thoroughly well considered, and the opinion in that case by Judge Truly is full and careful and thoroughly sound, and is, we think, decisive of the controversy in this case.

In the Alabama case referred to and criticised in *Orrell v. Bay Mfg. Co., supra,* to-wit, *Millikin v. Carmichael,* 134 Ala. 623, 33 South. 9, 92 Am. St. Rep. 45, it seems to have been conceded in argument, curiously, that the separate homestead acknowledgment was necessary, and, secondly, that the instrument was violative of the policy of the federal statutes in respect to homesteads. We have refused in the *Orrell case* to follow the Alabama supreme court on the second proposition

.that such an instrument as this is. in violation of the policy of the federal statutes in respect to homesteads; and the Alabama .supreme court in the late case of *Millikin v. Carmichael,* 139 Ala. 226, 35 South. 706, 101 Am. St. Rep. 29, squarely held that the homestead acknowledgment was not necessary to such an instrument as this. These two cases, *Orrell v. Bay Mfg. Co.,* 83 Miss. 800, 36 South. 561, 70 L. R. A. 881 and *Millikin .v. Carmichael,* 139 Ala. 226, 35 South. 706, 101 Am. St. Rep. 29, in effect decide, also, as a necessary corollary, that such an instrument as this conveys nothing which in any wise dimin- .ishes or impairs the value of the land as land, or of the trees as ·trees. Mr. Justice Truly, in the *Orrell case, supra,* quotes .approvingly from *Bryant v. United States,* 105 Fed. 943, 45 C. C. A. 148, this passage: "We think it is not a matter of com- ·mon knowledge that such cutting and boxing of pine trees de- stroy the value of the trees as timber, or that it has a tendency to retard the growth of the trees. It is, however, we think, a ·matter of common knowledge, of which we may take notice, that on March 2, 1831; and long before that date, the 'turpen- tine business' was an industry most prevalent in all parts of the country where there were. pine trees growing on public lands, and if it had been the intention to protect these public lands from the ravages of that business it would have been easy to make that intention clear by the use of appropriate words." We thoroughly agree with this statement that it cannot be said to be a matter of common knowledge that the cutting and boxing of pine trees destroys the value of the trees as timber; and we further agree that everywhere in the country where pine trees were growing on public lands this turpentine business had been. in vogue since before 1831. It is said in the course of argu- ment, and with great force, that if such an instrument as this could be held to convey any interest in the land as land, then the value of the land for assessment purposes should be reduced by the value of this interest in land for assessment purposes; the one (the value of the land) being assessed to the grantor,

and the other (this particular and special interest) being assessed to the grantee in this instrument, so as to avoid double taxation. But there is no interest, as we have held, in the land as land granted or which passes by this instrument. See, as throwing material light on this particular .point, *Boston Mfg. Company v. Newton,* 22 Pick. (Mass.) 23, *Fall River v. County Commissioners,* 125 Mass. 567, and especially *Hughes v. Vail,* 57 Vt. 43, and *Clove Spring Iron Works v. Cone,* 56 Vt. 603. These cases, just referred to, indubitably establish the proposition that no title to this crude resin, or turpentine, passes under this instrument until there shall have been a severance of it from the trees, and it must follow, as a necessary corollary, that the grantee under this instrument never had any interest in the land, as land.

There has been a great deal of confusion in the books about what is and what is not a lease. Many cases are collected in the valuable note to *Heywood v. Fulmer,* 186 L. R. A. 491. That case approves, and we approve, the following definition taken from 12 Am. & Eng. Ency. of Law, p. 976: "No particular form of expression or technical words are necessary to constitute a lease; but whatever expressions explain the intention of the parties to be that one shall divest himself of the possession of his property, and the other shall take it for a certain space of time, are sufficient and will amount to a lease for years as effectually as if the most proper and permanent form of words had been made use of for that purpose." In a number of cases cited in the note to this case, a clear distinction is drawn between a grant of the right for a term of years to take from certain premises ore or mineral, coupled with the right of ingress and egress, etc., to do so, and an outright sale of minerals or ore in place; in the last class of cases it being always held that the conveyance is an outright sale, and of course, a conveyance of an interest in the land. Speaking of these two classes of cases, the author of the note then says: "But the cases above (i. e., those of the first class referred to) are to be

clearly distinguished from those in which all the minerals within certain land are expressly conveyed. Such a conveyance grants an interest in the land, and excludes the grantor from the mine." This second class of cases is well-illustrated by one of the cases cited by the learned counsel for the appellant, to-wit, *Consolidated Coal Co. of St. Louis v. James D. Baker,* 135 Ill. 550–551, 26 N. E. 651, 12 L. R. A. 247. That case held that where there was no division of ownership, as between the land and the minerals in it, the land should all properly be assessed, with the fee, to the owner, but where the fee and the coal were owned by different persons they should be separately assessed as real estate, meaning, of course, where the ore was still in place in the land; and that case further held that in such case the two assessments must equal the value of the land proper augmented by the value of the coal, and that wherever coal underlying the land, in place in the land, is dealt with, it may be conveyed by a proper instrument, so as to pass the title to the same, with the right to mine it, and that an instrument of that sort is much more than a mere license to enter and mine the coal. It is a conveyance of the coal itself, as it lies in its natural state, and the subject of such grant is real property in the grantee, which is liable to taxation as such. But that case was in construction of chapter 120 of the Revised Statutes of Illinois of 1874, set out at page 549, and the reasoning set out on page 551 of 135 Ill., and on page 652 of 26 N. E., is simply to the effect we have previously stated, with this further thought: That such coal or mineral is to be assessed as real estate while so in place in the ground, where there is an absolute conveyance of the coal, not where the instrument is like the one here, granting nothing but the mere right to enter and take away the property. This same principle is announced in *Sanderson v. City of Scranton,* 105 Pa. 474, which simply holds that, where there is a divided ownership, there must be a divided taxation in cases of this sort.

It is very aptly said, so aptly that we think it worthy of quo-

tation as a part of this opinion, by one of the learned counsel for the appellee, as follows: "For illustration, if A. sells to B. the right to gather all of the pecans that shall be produced on his (A.'s) pecan orchard, or all the grapes which his vineyard shall yield in three years, certain it is that such privilege would not be assessable, because A. pays the taxes on his lands, in assessing which the pecan orchard or the vineyard is taken into consideration as a part thereof, and the fact that it may bear fruit is considered as an element of value in assessing such lands, and then B. is assessed with the personal property as such; that is to say, the fruits after they shall have been gathered. Any other mode of taxation would be inequitable as double taxation. If, again, A. were to say to B. ,'I give you the right and privilege, for a certain price, to gather all of the cabbages that shall grow to maturity upon a certain tract of land, which I have sown with cabbage seeds,' certain it is that all that B. could be assessed with would be the cabbages, as personal property, when gathered. Now, what is the difference between the annual product of the pecan orchard or the vineyard or the cabbage field, and the annual product of the pine tree? All yield a yearly crop, and in the cases of the pecan orchard and the vineyard the fruit of the tree or vine is what is gathered, while in the case of the turpentine it is likewise the annual product of the tree for three consecutive years that is gathered by the grantee." This seems to us the very essence of the whole point involved in this case, and the common-sense view—the view, too, supported, as we have shown, by the authorities. We conclude, therefore, that whatever this instrument may be called technically, whether a lease or a license, undoubtedly what it grants is not any interest in the land as land, but a mere irrevocable right, during the life of the contract, to enter upon the land and take from the pine trees the crude resin or turpentine. Confining ourselves strictly to the precise point presented for adjudication by this record, which is, merely and simply, whether this instrument passes any in-

terest in the land as land, and therefore assessable as land, we say that it does not.

Wherefore the decree of the court below is *affirmed.*