# State *v.* Roden Coal Co.

### Taxation.

(Decided November 16, 1916. 73 South. 5.)

1. **Taxation; Property Subject; Interest in Land.**—Every separate interest in land, such as minerals or timber, is subject to taxation under subdivision 1, § 2082, Code 1907, when such interest is owned by a person other than the owner of the soil or surface.

2. **Same.**—Under such section and subdivision, the person against whom mineral rights or property are assessed for taxation, must be the owner at least to the extent of a freehold interest.

3. **Mines and Minerals; Lease; Construction.**—The lease stated and construed and held to create merely a leasehold interest in the lessee, which was a chattel real, and did not convey to the lessee any title to the coal in situ.

. **4. Taxation; Statutes; Construction.**—A statute levying a tax is to be strictly construed against the taxing power.

. **5. Same; Property Subject; Leasehold Interest.**—A leasehold interest or estate under a lease granting the right to mine coal is a chattel real, and not a freehold estate, and is not taxable under subdivision 1, § 2082, Code 1907.

APPEAL from Bibb Circuit Court.

Heard before Hon. B. M. MILLER.

Tax proceedings by the State of Alabama against the Roden Coal Company. Judgment for defendant, and plaintiff appeals. Affirmed.

By the proceedings in this case the state seeks to tax the leasehold interest in the mineral rights in certain lands in Bibb county, Ala., leased by the defendant from the Alabama Mineral Land Company. The lease is sought to be taxed as escaped property and for a period of five years next preceding the date of the institution of these proceedings. The information in the cause describes the interest as follows: "The leasehold interest and mineral rights in and to the land described in the notice, and the buildings and improvements upon the surface of the land."

· The defendant pleaded that a leasehold interest in lands, whether in surface or mineral rights, is not taxable under the laws of this state. It was further pleaded, and proven without dispute, that during the years for which the alleged escaped taxes are claimed the Alabama Mineral Land Company was the owner in fee simple of the lands described, both mineral and surface; that that company duly returned said lands for taxation, and that both the mineral and surface interests in the same were assessed for taxation against the Alabama Mineral Land Company for each of the said years; that the taxes were paid in full by said company; and that the defendant, Roden Coal Company, returned for taxation all the improvements on the lands and paid in full the taxes assessed on said improvements.

Demurrer to these pleas was sustained by the court below, the court holding, in effect, that notwithstanding the payment of the taxes on the land, including both mineral and surface interests and the payment of taxes on the improvements, the naked right to go upon the land for the purpose of extracting coal was a property right, and, as such, subject to taxation.

The case was tried on this theory, and was submitted to the jury for their determination of what was the market value of this leasehold interest for the purpose of taxation. The court

proceeded on the theory that the taxable value of the interest sought to be taxed was the difference between the royalty paid by the defendant and the price which the defendant's rights under the lease would bring in the open market. The jury found in favor of the defendant, and judgment was entered accordingly. From this judgment the state prosecutes this appeal.

The lease contract under which defendant operated the mines begins in the following language: "This lease agreement, made at Anniston, Calhoun county, Ala., on June 24, 1907, by and between the Alabama Mineral Land Company, a corporation, lessor, and the Roden Coal Company, a corporation, lessee, witnesseth: That said lessor for the consideration hereinafter named does hereby demise and let to said lessee, with the surface rights described in Paragraph two (2) of this lease, the right and privilege of mining coal from the Clark and Gholson seams (further identified as the two seams on which the Roden Coal Company has opened slopes during the year 1907), where said seams are in and under the following lands, to wit: [Here follows description of land.] To have and to hold unto said lessee for a term of nineteen (19) years, four (4) months, and twenty (20) days, expiring on November 14, 1926, upon the conditions and terms hereinafter set forth, to wit," etc.

The lease further provided for the right of the lessee to sink or open shafts, slopes, or drifts proper for the mining of coal, and for the right to build railroads for transporting the coal, and to erect houses for use of the employees. It provided that the lessee should pay to the lessor "a rent or royalty of eight cents per ton of 2,000 pounds on all coal mined, of every quality and description," and stipulated for the payment of a monthly rental of not less than $250 per month, designated as "the minimum royalty or rent to be paid," and that said minimum rent was to be paid "whether any coal has been mined from said land or not." The lease further provided for forfeiture of the lease by the lessor for default in any installment of rent, or for failure on the part of the lessee to work said mines with reasonable diligence or for their best development, or for any unnecessary damage inflicted upon the property. Paragraph 7 of the lease prohibited any subletting or assignments without the written consent of the lessor. By paragraph 8 the lessee agreed that the mines should be opened and operated in a skillful manner; that all entries and roofs therein should be thoroughly propped, so as to make them safe

and convenient for present and future mining. The lease embraced many other provisions usual in contracts of this character which need not be here set out.

W. L. MARTIN, Attorney General, and HARWELL G. DAVIS, Assistant Attorney General, for the State. TILLMAN, BRADLEY & MORROW, and E. L. ALL, for appellee.

GARDNER, J.—It is insisted on the part of the state that the leasehold interest of the Roden Coal Company referred to in the above statement of facts is subject to taxation as an interest in land embraced within the provisions of subdivision 1 of section 2082 of the Code, which reads as follows: "Every piece, parcel, tract, or lot of land in this State, including therein all things pertaining to such land, and all structures and other things so annexed or attached thereto, as to pass to a vendee by conveyance of such land; and every separate or special interest in any land, such as mineral, timber, or other interest, when such interest is owned by a person other than the owner of the surface or soil."

(1) The language of this statute is plain and unambiguous. The separate interest in any land, such as mineral or timber, is the subject of taxation under the express words of the statute, "when such interest is owned by a person other than the owner of the surface or soil."

In discussing a question of a character similar to that here under consideration, and a statute using the word "held" instead of "owned," the Supreme Court of West Virginia, in the case of *State v. South Penn Oil Co.*, 42 W. Va. 80, 24 S. E. 688, said: "In the assessment law the term 'property' is used, not in the sense of the right of ownership, but of the thing owned, which is listed for taxation opposite the name of the owner. * * * The court took the view, in construing the statute, that the word 'held' meant 'owned,' in the sense of at least freehold ownership; that the party to be separately assessed must own the mineral privilege or interest, if not in fee, at least to the extent of a freehold; that a mere lessee for years, paying royalty or rent in kind, has a chattel interest; but that the entire ownership of the whole corpus remains undivided in the lessor. A lessee, in the proper sense, may, by contract, have the right to the possession, and the possession, of the coal, as a part * * * of the ownership of the thing owned is vested in him; and the statute contemplates a

case in which the other party has become the owner of the mineral or coal and 'holds' it as such owner. And in that common-law sense, adopted by the general assessment law, the ownership to be assessed cannot be divided into parts less in quantity than a freehold.   *   *   *

"Thus far we have endeavored to show that the true interpretation of the act for the reassessment of real estate does not contemplate or require separate assessment of minerals from the land, except where separate freehold interests are held or owned, for the purpose is not to increase the value of the land, and thereby increase the taxes, but to divide the taxation, where there is divided ownership; so that each owner may be assessed, held liable, and proceeded against directly by the state for his part, and no more, and that his land shall not be returned delinquent for taxes, and sold for a tax on the coal or oil which another man owns."

The Supreme Court of Kansas, in the case of *Kansas Co. v. Board of Com'rs*, 75 Kan. 335, 89 Pac. 750, discussing a similar tax provision, reached the same conclusion, although the wording of the statute was somewhat different. That court said: "It is contemplated that there shall be an estate consisting of what is left after the mineral rights have been carved out, and that there shall be an estate consisting of the mineral rights which have been segregated. The statute further contemplates that each estate must vest in a separate person. The respective proprietors are called 'owners,' and the estate in the minerals is nothing short of the right or title to the minerals themselves as they lie in the ground. When such a state of affairs exists, the statute regards the owner of the mineral rights as the proprietor of a distinct item of property which is taxable to him, apart from that which is taxable to the owner of the tract, or parcel, or lot in which the minerals are located, and it makes provision for separate lists, entries, descriptions, valuations, etc. The right or title to the minerals, as the statute expresses it, is taxed as realty. The owner is charged with taxes according to the value of his interest, and the owner of the overlying strata is taxed according to the value of the remaining interest in the land. But there must be a severance of the right to the mineral and nonmineral portions of the land, respectively, before there can be a division in taxation."

(2) Clearly, therefore, under the very language of the statute, according to sound principles, and in harmony with these

well-considered cases, the person against whom the mineral rights of the property are assessed for taxation must be the owner, at least to the extent of a freehold interest.   Indeed, this proposition does not seem to be converted by counsel for the state in their brief; but their argument is based upon the theory that by such contract there has been vested in the Roden Coal Company an estate in the coal in the mine leased, a proper subject of taxation.

The lease under which the Roden Coal Company operated this mine was for a term of 19 years, and stipulated for the payment by the lessee, as rent or royalty, of 8 cents per ton on all coal of every quality mined, and the payment of $250 per month as the minimum rent.   It is termed a lease by the parties, and contains many provisions of forfeiture on the part of the lessee, such as default in payment of any installment, or failure on the part of lessee to work the mine with reasonable diligence, and like matters.   There is no provision indicating the conveyance of any present interest in the coal, and no words of "bargain and sale."

Contracts concerning mineral rights have been the subject of frequent discussion by several of the courts of last resort in recent years.   In the case of *Harvey Coal Co. v. Dillon*, 59 W. Va. 605, 53 S. E. 928, 6 L. R. A. (N. S.) 628, 636, 637, the Supreme Court of West Virginia has treated the subject and reviewed many of the authorities.   The opinion quotes many definitions applicable to the question here under consideration, such as :   "A 'freehold interest' is an estate for life or in fee; a 'chattel real' for a less estate.   *   *   *   Bouvier's Law Dictionary says : 'Real chattels are interests which are annexed to or concern real estate; as a lease for years of land.' "

Speaking of leases of this character, the opinion proceeds : "The statute charged land only to the freehold owner.   Just as I have once said above, in this case the coal company has right of possession of the coal and of the land to mine that coal, but no title to the very coal or land—only a right to coal in connection with the intangible right to produce coal, to make it personal property for market.   These leases, in their plain import, mean that the surface owner owns the whole land and everything in place in it, and that the lessee simply has a usufructuary right in connection with the land, right to use the land for a purpose, a terminable right, which may be long or short in years; that is,

[State v. Roden Coal Co.]

a mere chattel real, issuing out of lands, but constituting a distinct estate, a valuable one as property, and which is property, and therefore taxable, if the state see proper to do so. It must be a mere leasehold, a chattel real. Not being a freehold, and being incorporeal, a mere right to use the land for a purpose, what can it be but a leasehold for years? It must be something in the legal eye. It cannot be nondescript."

In discussing some of the Pennsylvania cases in which it was held that the grantee acquired title to the coal in situ, it was pointed out that the contracts there under review by that court vested a present interest in the grantee or lessee in the mineral. The opinion quotes from the Court of Appeals of New York in the case of *Genet v. D. & H. Canal Co.*, 136 N. Y. 593, 32 N. E. 1078, 19 L. R. A. 127, as follows: "Whatever we may think of the general doctrine, one thing about it is quite obvious; it applies to a case, and only to a case, in which by the terms of the agreement, and in contemplation of the parties, the whole body of the coal, considered as of cubical dimensions, and capable of descriptive separation from the earth above and around it, * * * and as it lies in its place, is absolutely and presently conveyed. The thing sold must be such that it can be identified as land, and severed as land from the estate of which it forms a part. Every case upholding the doctrine which I have been able to examine has that marked characteristic."

A discussion here of such contracts, and of cases holding that these contracts create merely a leasehold interest denominated a "chattel real," and of cases holding that they convey a present estate or interest in the coal in situ, could add nothing of value to what has been written in the numerous cases involving questions of this character.

(3) The above-cited case of *Harvey Coal Co. v. Dillon* clearly demonstrates, and to our satisfaction, that the lease contract here under consideration created merely a leasehold interest in the lessee, a chattel real, and did not convey to the lessee any title to the coal in situ.

The situation is well summarized, in our opinion, by the Supreme Court of Connecticut in *Appeal of Sanford*, 75 Conn. 590, 54 Atl. 739, where there is found the following language: "The instruments by which these several estates or interests in minerals are created are frequently, without distinction, called 'mining leases,' and the numerous decisions as to the respective

titles conveyed by them are not entirely harmonious. Their legal effect is to be determined not so much by the name given to them, or the technical terms employed in them, as by ascertaining from the entire language of each instrument the real intention of the parties, by applying to it the ordinary rules governing the construction of written conveyances. When it clearly appears from the language of the instrument that it was intended to convey at a fixed price the whole or a specified part of the unmined minerals in a described tract of land, it is generally held that an absolute ownership in fee of such minerals in place vests in the grantee immediately upon the delivery of the conveyance, and in some cases, particularly in Pennsylvania, it has been so held when the conveyances took the form of leases for a term of years.  *  *  *

"Instruments which only give a right or privilege of entering upon land for the purpose of mining and removing the minerals therefrom are held to convey no title to or property in the minerals themselves while in the ground, and to create no greater interest in land, even though that interest be real estate, than an incorporeal right to mine, with a title in the minerals after they have been removed by the grantee.  *  *  *

"The weight of authority clearly is that an instrument which purports to convey certain land at a fixed rent, for a term of years, for the purpose of mining, or with the privilege of mining during the term, or which grants merely the right or privilege to mine for a term of years upon described land, conveys no greater estate in the land or the minerals in place than a chattel interest.  *  *  *"   In the case of *Denniston v. Haddock*, 200 Pa. 426, 50 Atl. 197, "Mitchell, J., in speaking of some of the earlier Pennsylvania decisions, says that 'the expression that a conveyance of coal in place, even by a lease for a limited term, is a sale, is inaccurate as a general proposition of law, and unfortunate from its tendency to mislead,' and that 'the rules applicable to sales are not to be applied indiscriminately to such instruments, but each is to be construed, like any other contract, by its own terms.' A collection of cases regarding questions of title to minerals under conveyances of different characters may be found in chapter 2 of Barringer & Adams on Law of Mines & Mining."

And in speaking of the lease there under consideration, somewhat similar to that here involved, the Connecticut court said: "By these provisions the lessee does not pay any sum for the garnets in place, but pays a fixed annual rent for the property,

whether he mines the garnets or not, with the right to remove the minerals only during the terms, which may be forfeited for nonpayment of rent or terminated by the lessee after two years. No quarries or mines were conveyed, for none existed when the leases were executed. It is not claimed that the lessee took any greater interest in the land, apart from the minerals, than an estate for years. In so far as these instruments convey an interest in land, they are either grants of an incorporeal right to mine for a term of years, the title to the minerals to vest in the grantee only after they have been removed by him, or they are leases of the described land for a term of years, with the added right of mining during the term of the lease. In either case the interest of the grantee or lessee in either the land or minerals is but a chattel interest, and when created by contract, as this was, it is not such an interest in land as, under our statutes, is taxable as the property of Behr & Co."

In *Coolbaugh v. Lehigh, etc., Co.*, 213 Pa. 28, 62 Atl. 94, 4 L. R. A. (N. S.) 207, the Supreme Court of Pennsylvania cites several cases of that state, and qualifies some of the language used in the former decisions of that court. Many authorities touching the question under consideration, with comments thereon, are cited in the note to the *Coolbaugh Case*. Other cases in point are cited in note to the case of *Wolfe Co. v. Beckett*, 127 Ky. 252, 105 S. W. 447, 17 L. R. A. (N. S.) 688. See, also, *Bd. Supervisors v. Imperial N. S. Co.*, 93 Miss. 822, 47 South. 177, 17 L. R. A. (N. S.) 693, and note; *Ashe Carson Co. v. State*, 138 Ala. 108, 35 South. 38; *Kennedy Stave Co. v. Sloss-S. S. & I. Co.*, 137 Ala. 401, 34 South. 372.

We conclude that the interest of the lessee, under the contract referred to in the above statement, of facts, was a leasehold interest, a chattel real, and that the lessee was therefore not the "owner" of the coal in situ within the meaning of the language of subdivision 1 of Code, § 2082.

Counsel for the state appear to base their entire reliance on the case of *Freeman v. State*, 115 Ala. 208, 22 South. 560, which decision seems to have been without citation or comment in any of our subsequent cases. The authorities cited herein clearly show that the question of what estate or interest is granted in these mining contracts is not to be settled by any one particular rule, but that every such instrument is to be construed like any other contract—by its own terms to carry out the intent of the

parties. In the *Freeman Case* it appears that the timber to be cut on the land therein described, was specified as that of certain dimensions, and ascertained to be a certain number of feet, and was to be paid at $1 per 1,000 feet. In payment thereof the purchasers—for such it seems they were in fact—were to execute their notes for the estimated amount of the timber, payable in 12, 18, and 24 months from date, with interest at 6 per cent. The notes were to be indorsed by certain named persons. The contract there under consideration is not set out in full in the report of that case, but the facts above stated, constituting the essential elements of the contract, can be readily seen to support the conclusion that it was the intention of the parties to convey a present interest in the timber standing on the land. While the contract provided a period of 8 years in which the purchasers could cut the timber from the land, yet under its terms the whole of the purchase price was to be paid within 2 years, and a large portion thereof within less time. The notes to be executed for the purchase price were to be indorsed by persons with whose solvency, it is but natural to presume, the grantor was entirely satisfied, and might therefor be considered as cash or as notes easily negotiable for cash. The *Freeman Case* is commented on by the author of the note to the case of *Board of Supervisors v. Imperial N. S. Co., supra,* as being in conflict with the subsequent case of *Ashe Carson v. State, supra.* The latter case dealt with a mere lease for a number of years of certain pine timber for turpentine purposes. The two cases are, in our opinion, easily distinquishable; and we are unable to see any conflict between them. We therefore hold that the case of *Freeman v. State* does not militate against the conclusion reached in the instant case.

The undisputed evidence in the record discloses that the entire body of land, including the surface and minerals, was assessed for taxes against the Alabama Mineral Land Company, as the owner in fee simple, and that the improvements placed on the land, such as houses, etc., were assessed against the defendant, the Roden Coal Company, and that these taxes have been paid for the years involved in this proceeding. The lower court recognized this in its charge to the jury, but held that the mere right of the defendant to mine this coal was a property right and subject to taxation under the law of this state. That this leasehold interest is property, a chattel real, we think, was clearly pointed out by the West Virginia Supreme Court in the case of

[State v. Roden Coal Co.]

*Harvey Coal Co. v. Dillon, supra.* Such a right, however, is in the nature of personal property. In the *Dillon Case* it was clearly demonstrated that such leasehold estate constitutes not only property, but a very valuable property, in that state. The opinion there discloses that the question of taxation became one of great agitation in the state of West Virginia, resulting in the appointment of a special committee to revise the tax laws; and that, as the result, the Legislature did revise the laws so as to include in the specification of property to be taxed chattels real, to the end that these valuable leasehold interests in minerals in that state might be assessed for taxation.

(4) Under the general rule, which is recognized by our authorities, a taxation statute is one which is to be strictly construed against the state.—*Ashe Carson v. State, supra.*

(5) We have no statute, so far as we are advised, which has attempted to tax leasehold estates, chattels real. That they constitute valuable property and may be made the subject of taxation is clearly demonstrated in the *Dillon Case.* This, however, is a matter properly addressed to the lawmaking body of the state, and not to the judiciary. The lawmaking power has not seen fit to make such interests the subject of taxation in this state.

It is not insisted by counsel for the state that such leasehold interests are taxable under any other statutory provisions than the one above quoted, relating to real estate or separate interests therein.

Our conclusion is that the leasehold interest of the defendant coal company was not the subject of taxation. It therefore becomes unnecessary to give consideration to any other question presented on this appeal.

It results that the judgment must be affirmed.

Affirmed.

ANDERSON, C. J., and MCCLELLAN and SAYRE, JJ., concur.