## Chesapeake & Ohio Railway Company v. Thompson.

(Decided May 12, 1915.)

## Appeal from Greenup Circuit Court.

1. **Deeds—Construction—Location.**—In determining the meaning of the term "locate" as used in the covenant of a deed giving the land owner the right to locate an overhead crossing over the right of way of a railroad company, we must consider the thing to be located, and its purpose.

2. **Deeds—Words—Meaning of.**—To "locate" a thing means to place it; not to design or construct it.

3. **Deeds—Location of Overhead Crossing—Construction.**—Where the owner of a farm through which a railroad passed had the right. under a deed to "locate" an overhead crossing or bridge over the right of way for his own use, he did not have the right to require the overhead bridge to be built across the right of way in a diagonal direction; the railroad company had the right to build the overhead bridge at right angles to the railroad track, and when so built it was a compliance with the covenant of the deed.

WORTHINGTON, COCHRAN & BROWNING for appellant.

P. K. MALIN and S. S. WILLIS for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE MILLER— Reversing.

The appellee, Andrew Thompson, owns a farm of 110 acres which lies upon the bank of the Ohio River, in Greenup County. Appellant's railroad runs parallel with the river, and through appellee's farm, dividing it about into halves, the nothern half lying between the railroad and the river, and the other half upon the southern side of the railroad.

Thompson's house and outbuildings are located upon the southern half of the farm; and the only outlet from that half to the northern half of the farm, unless a roadway over a neighbor's land is used, is over or across the appellant's track and right-of-way.

Previous to 1910 the railroad consisted of a single track, which, at this point, was practically upon the same grade as the adjoining land. Thompson had a grade crossing which ran diagonally over the right-of-way and the tracks of the railroad, near, and in part along, the eastern boundary line of his farm. He had been using this crossing for several years. In 1910, the appellant converted its railroad into a double track road, and, in

doing so, the grade of the road was considerably lowered at the crossing point, the tracks being located in a cut which was several feet below the surface of the adjoining land.

And, the company needing more land to enable it to properly make the changes above described, Thompson sold it an additional strip, containing 6.22 acres, located next to and along the north side of the old right-of-way, for the sum of $1,800.00. The deed conveying this strip of land from Thompson, who is designated as the party of the first part, to the appellant, the party of the second part, contained this clause:

"It is further understood and agreed that the party of the second part shall, at some convenient place on the tract herein conveyed, construct and maintain a sufficient overhead crossing over its right-of-way for the use of said party of the first part. The location of the said crossing to be selected by the first party."

Acting under this provision of the deed, Thompson designated the site of the old grade crossing as the site for the erection of the proposed overhead crossing; and, pursuant to this designation and its agreement, the appellant promptly constructed an overhead crossing or bridge for Thompson's use.

The bridge is 12 feet wide, with railings upon either side 3½ feet high. It has a 24-foot span immediately over the tracks, and a shorter span 19 feet in length at either end of the principal span. At the end of each 19-foot span an earthen driveway leads down to the road.

Thompson declined, however, to accept the bridge as a compliance with the agreement, and instituted this suit alleging a breach of the covenant, and praying for a specific performance thereof, and for $2,000 damages. Appellant contends that it has fully complied with its contract, and that if the crossing is insufficient in any way, the defect resulted from Thompson's own conduct.

The facts upon which the respective contentions of the parties are based are as follows: As heretofore stated, the old grade crossing which had been used by Thompson previous to 1910, crossed the railroad track in a diagonal direction, while the new overhead crossing or bridge crosses the tracks at a right angle, although the center of the new bridge is directly over the center of the old diagonal crossing.

It will thus be seen that the point of intersection of the new crossing with the appellant's northern right-of-way line was several feet east of the point of its intersection with the southern right-of-way line. Thompson does not dispute appellant's assertion that he designated the old crossing as the site for the new crossing, but he contends that when he designated the site of the old grade crossing as the site of the proposed new overhead crossing, it became the duty of the company to construct the overhead crossing upon precisely the same location of the grade crossing; that the covenant required the overhead crossing to be constructed upon the same lines, and run in the same course and direction as the grade crossing; and that he had the right to designate, not only where the overhead bridge should be located, but also where each end of it should be located.

Thompson further contends that the crossing is not "sufficient"; that it is constructed in such a way that it cannot be used with ease and safety, because the approaches curve away from the bridge at each end at such sharp angles as to make the structure practically useless for heavy farm hauling.

Appellant admits that the approaches deflect from the ends of the bridge in the way above indicated, but it shows they were so constructed because Thompson requested it, in order that the approaches should connect with his old roadway in such a way as to take a minimum amount of his land; that the appellant was willing to run the approaches in a straight line from the ends of the bridge, but was prevented from so doing by Thompson; and that, in as much as any insufficiency in the bridge is due to Thompson's own action, he is estopped to complain thereof.

There was some evidence offered by appellee to the effect that appellant agreed to place the new bridge in the same diagonal direction as the old crossing; but since the petition relies alone upon the covenant in the deed as above set forth, and makes no complaint that it does not truly state the whole contract, the evidence above referred to was incompetent, and will be disregarded.

The chancellor found that the company had not complied with its contract, and decreed a specific performance thereof, directing the company to remove the new bridge, and to construct, in lieu thereof, another over-

head bridge on the diagonal line of the old crossing, and in line with the road leading to and from the old crossing, and to construct approaches thereto.

There is little difference between the parties as to the facts of this case. No complaint is made by Thompson that the bridge as constructed is not well made, and of ample width and size in every respect; his only complaint is that it was constructed across the tracks at right angles instead of in a diagonal course so as to conform to the direction of the old grade crossing, and his farm road. His contention that he had the right, under the stipulation in the deed, not only to locate the bridge, but to designate the point where either end thereof should be located so as to make it extend across the tracks in any direction that might suit him, is not sustained by the terms of the stipulation. It merely provided that he had the right to select the location of the crossing.

It appears from the proof that the deed, as originally drawn, did not contain the last sentence in the stipulation above quoted, to the effect that the location of the crossing should be selected by the first party; it merely provided that the company should construct an overhead crossing at some convenient place on the tract of land therein conveyed. But when Thompson raised some objection to the clause as drawn, it was changed to suit him, by adding the final clause, which gave him the right to select the location of the crossing.

The decision of the case, therefore, turns upon the meaning to be given the term "locate," and the extent of the right so granted to Thompson.

In determining the meaning of the term "locate," we must consider the thing to be located and its purpose. Here, the purpose of the overhead crossing was to enable Thompson to pass from one side of his farm to the other; not to pass in any precise direction by the compass—northeast or northwest—but to get over the track in a safe way. And, to accomplish that purpose, Thompson had the right to say at what place on his farm he would cross the track—whether on the east side, the middle thereof, or elsewhere. If any greater or more precise right of location in Thompson had been intended it certainly would have been expressed in the writing. In short, to locate a thing means to place it, not to design it, or construct it.

Furthermore, we must consider the situation and rights of both parties. Thompson had the right to say where the bridge should be placed; whether upon the eastern side of his farm, in the middle thereof, or upon the western side thereof, as it might be most convenient and suitable to him. He was the sole judge of that question. But when it came to constructing the bridge over appellant's tracks, its rights had to be considered in connection with the operation of its trains; the general safety of persons using appellant's trains and those using the overhead bridge; as well as the question of cost in connection with that of proper construction, and the efficiency of the bridge for Thompson's ordinary and reasonable use. The company certainly had the right under the contract to determine the character, quality, and size of the bridge, its height, width, &c.; the only limitation upon its discretion in those respects being that the bridge should be sufficient for Thompson's use, under the circumstances.

In a case of this character neither party will be allowed to arbitrarily exercise his right under the contract to the manifest injury or detriment of the other party. 3 Elliott on Railroads, sec. 1143.

When Pyle, the engineer who built the bridge, was asked what reason, if any, existed for the construction of overhead crossings at right angles to the railroad tracks, instead of in a diagonal direction, he answered as follows:

"In the first place, it is a uniform rule of the railway company to so construct them, because it is absolutely necessary to put the bents parallel with tracks and at right angles to the center line, so as not to obstruct the view of the engineers; and to put the floor system diagonally would make a longer span, and therefore decrease the efficiency of the bridge and make a weak structure."

Claiborne, another engineer, who assisted in building the bridge, testified to the same effect; and this seems to be the uniform and approved method of constructing overhead bridges.

It needs little skill in engineering problems for one to appreciate the soundness of this principle of bridge-building.

It further appears from the proof that the old road ran immediately next to the boundary line between

Thompson and Mrs. McIlheney, and that if the new bridge had been located diagonally to conform to the old crossing, the approaches thereto necessarily would have encroached upon Mrs. McIlheney's property. It is further shown that the only objection appellee had to running the approaches in a straight line from the ends of the bridge related to the insignificant quantity of land that a road located in that way would occupy.

Appellant was willing, and is yet willing, to construct the approaches in a straight line from the ends of the bridge; and the proof shows it constructed them in their present curving direction at the request of the appellee.

Appellee estimates that to run the approaches straight out from the ends of the bridge would only take a strip of land about twenty feet wide and not exceeding one hundred feet in length; while appellant's engineers estimate that it would require less. Under either estimate, the amount of additional land that would be necessary would be insignificant; nevertheless, this was the reason appellee gave for directing appellant to build the approaches as it did.

And, although Thompson says the curves from the ends of the bridge on to the old road are so sharp and steep as to make them unsafe for use by a wagon drawn by four horses, he admits he has never tried to use the bridge in any way. In short, his case is rested upon his alleged right under the deed to locate the bridge, and every part of it, to suit his own notions of convenience, regardless of what a reasonable construction of the contract requires of each party thereto.

We are of opinion that the bridge as constructed is a substantial compliance with the contract, and that a court of equity should not interfere in such a case, merely for the purpose of satisfying an unreasonable construction thereof by one of the parties. To require a reconstruction of this bridge, which would be necessary under the decree of the chancellor, would be to entirely disregard the substance of the contract. There is no equity in appellee's case.

Judgment reversed with instructions to the chancellor to dismiss the petition.