## Juett v. Cincinnati, N. O. & T. P. R. Co. et al.

(Decided June 14, 1932.)

380

C. C. ADAMS for appellant.

F. A. HARRISON and A. M. SAMUELS for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER
—Reversing.

Years ago, Henry Juett had a private crossing at grade over the track of the Cincinnati, New Orleans & Texas Pacific Railway. On May 26, 1898, a contract was made by him and the receiver of the company for its elimination and the substitution of a bridge. After reciting the conditions and agreement to change the crossing, it was contracted that the receiver would build the bridge ten feet wide, and Juett agreed "for himself and his heirs and assigns that upon the completion of said bridge he will pay to said receiver the sum of $150; and further that he will pay one-half of the cost of all repairs thereof when the same shall be necessary." The contract was complied with by both parties without any trouble, although it appears Juett was not called upon to pay for any repairs to the overpass built at that time. When the company doubletracked its road in 1915, the original bridge was destroyed and a new one built at substantially the same place. It was twelve and one-half feet wide and eighty-four feet long. At a later period Juett paid $26 upon demand for one-half of the cost of certain repairs made on the new bridge. In November, 1927, he sold that part of his farm to which this passway was appurtenant to Henry Bishop, and in the deed assigned and conveyed "all rights, benefits and advantages and all obligations" of the contract with the railroad company and the grantee assumed them. During 1928 the company expended $831.42 for extensive repairs on the bridge, and upon Juett's refusal to pay half of that cost the company sued him and Bishop on the contract and has recovered judgment for that amount, $415.71. Judgment was awarded Juett against Bishop on his cross-petition, rested upon the provision in the deed. It appears that the judgment against Bishop is of no value and Juett prosecutes this appeal against the railroad company.

It was and is Juett's contention that the contract

only bound him to pay for half the cost of repairing the original structure, and since that has been destroyed he is released from all liability. Waiving the possibility that this was not a continuing personal obligation and was only a contract running with the land, there is nothing in the contract which can be interpreted as binding Juett to share in the cost of repairing any overpass other than the one constructed under its provisions. If the new structure had been substantially the same, a different question might arise (cf. Chesapeake & O. Ry. Co. v. Thompson, 164 Ky. 612, 176 S. W. 22), but the railroad company, for its own convenience or to meet its own needs, erected a bridge one-fourth wider and twice as long. If the construction which the railroad company places upon the contract be proper, then whenever it desired it could do away with this one and build another overpass as long as it pleased and of such character as it chose and impose upon Juett and his estate, in perpetuity and without limitation, an obligation to share in the cost of maintaining that structure. The contract was made for a specific bridge, to meet a particular need, and to share in the cost of repairs *"thereof* when same shall be necessary." When that was destroyed by the company the contract was terminated.

In 6 R. C. L. 1005, the law applicable to such situation is thus stated:

"In all contracts in which the performance depends upon the continued existence of a given person or thing, a condition is implied that the impossibility arising from the perishing of the person or thing shall excuse the performance."

In 13 C. J. 642, it is written:

"Where from the nature of the contract it is evident that the parties contracted on the basis of the continued existence of a person or thing, condition or state of things, to which it relates, the subsequent perishing of the person or thing, or cessation of the existence of the condition will excuse the performance, a condition to such effect being implied in spite of the fact that the promise may have been unqualified."

To the same effect are Elliott on Contracts, secs. 1891, 2038; Black on Rescission and Cancellation of Contracts, sec. 209; and Jones-Gray Construction Co. v.

Stephens, 167 Ky. 765, 181 S. W. 659. There are some exceptions to this rule, as where the subject-matter is destroyed by the elements or other unavoidable accident, and there is only a temporary interruption in the performance of the contract or work to be maintained continuously. Elliott on Contracts, sec. 1908; Black, sec. 208. But if the impossibility of performance arises directly or indirectly from the act of the promisee, it is a sufficient excuse for nonperformance by the promisor. Elliott on Contracts, secs. 1914, 2041.

The situation is not unlike those contracts concerning the maintenance of a party wall which has been destroyed where there is no agreement for rebuilding it. 20 R. C. L. 1101; 47 C. J. 1333, 1343.

The appellee argues that by standing by in silence while the company was destroying the old and building the new overpass, and by later paying $26 as a part of a repair bill, and then by recognizing the existence of an obligation in the deed to his vendee, Juett is estopped to deny liability under the contract. No estoppel was pleaded; but if we should adopt the appellee's construction of the appellant's answer as setting up facts sufficient to bring the case within the rule referred to in Lockhart v. Kentland Coal & Coke Co., 182 Ky. 673, 207 S. W. 18, the argument cannot be sustained. All the evidence respecting this matter is that Juett knew that the old bridge was being destroyed in the widening of the railroad cut that it crossed for the purpose of building a second track and a side track through it, and while nothing was said to him about the change, he did not object to the new bridge being placed a little farther north. He owned the land on both sides of the railroad. Juett testified that in conveying the land to Bishop he recognized that he had a contract with the railroad company and had his vendee to assume its obligations. This was a matter between these two men and could not affect or create any right which, in fact, the company did not have. These things fall far short of constituting an estoppel by acquiesence to deny that he assumed an obligation to pay for repairs to the new structure. McGuire v. Carroll Construction Co., 177 Ky. 675, 198 S. W. 6. He may have been estopped from denying the right of the railroad company to erect the bridge in part upon his land (Floyd County v. Allen, 190 Ky. 532, 227 S. W. 994), but certainly his

silence did not create an obligation to pay for a part of its construction or maintenance.

The expectation by the company that Juett would bear a part of the cost of maintenance is certainly not sufficient to modify or extend their contract. He must have assented. Sometimes assent is construed by silence or act of the party, but the circumstances must be such as to show there was in fact a meeting of minds on the proposition or a consent to pay for the ensuing benefits. Elliott on Contracts, sec. 1365. The circumstances here are not of that character.

It is the duty of a railroad to maintain the crossing. Ky. Stats., sec. 768; Louisville & N. Railroad Co. v. Pittman, 64 S. W. 460, 23 Ky. Law Rep. 877; Cincinnati, N. O. & T. P. Ry. v. Dungan, 162 Ky. 36, 171 S. W. 1007; Louisville & N. Railroad Co. v. Muncey, 229 Ky. 538, 17 S. W. (2d) 422.

The theory of appellee that the tacit agreement to enlarge or substitute the overpass and its use by the appellant bound him to share in the cost of maintenance was the one upon which the case was submitted to the jury. That would be a novation or the substitution of a new implied obligation with the intent to extinguish the old one under the written contract. Russell v. Centers, 153 Ky. 469, 155 S. W. 1149; Kushner v. Knopf, 227 Ky. 369, 13 S. W. (2d) 271; 46 C. J. 575. The suit is founded wholly upon the latter and no right to recover under a different contract could be entertained. Fowler v. Thomson, 193 Ky. 593, 236 S. W. 1047.

As to the payment of the $26 repair bill on the new bridge, Juett refused at first to pay it, but eventually did so because, as he testified, he could not afford to be sued for that small sum. One is not estopped to deny liability when he has made a payment he was not legally bound to pay. O'Malley v. Wagner, 76 S. W. 356, 25 Ky. Law Rep. 810. In Slaughter v. Ditto, 108 S. W. 882, 33 Ky. Law Rep. 5, it is stated that one who makes payment in ignorance of a legal right or a valid defense against the claim is not deemed to have waived those rights nor to be estopped from later setting them up.

The court should have directed a verdict for the defendants. Wherefore the appeal is granted, and the judgment reversed.