## In re PURE ROCK ASPHALT CO.
### No. 10094.

District Court, W. D. Kentucky.
Aug. 21, 1939.

■■■■■■■■■

■■■■■■■■■

A. C. Vanwinkle and D. A. Sachs, both of Louisville, Ky., for petitioner.

George A. Brent, of Louisville, Ky., for trustee.

Lawrence Speckman, of Louisville, Ky., for the debtor, bankrupt.

MILLER, District Judge.

This matter is before the Court on the petition of J. L. H. Harper, claimant and creditor to review the order of the Referee in Bankruptcy, directing the trustee to sell certain real estate leases and options free of all liens and royalty claims of the petitioner, and rejecting claimant's proof of claim.

The petitioner who was one of the promoters of the Pure Rock Asphalt Company, bankrupt herein, executed an instrument on February 10, 1927, to the bankrupt which purported to convey to the bankrupt certain real estate and asphalt rights in Hart and Edmonson Counties, which instrument provided for a perpetual royalty to be paid to the grantor, with an annual minimum royalty and with a lien being retained on the property conveyed to secure the payment of said royalties. Following the adjudication of the Pure Rock Asphalt Company as a bankrupt the trustee petitioned the Referee for authority to sell the property free of all liens and royalty claims, with such liens and claims to attach to the proceeds of sale and requested that Harper be notified to appear and set up his claim or be forever barred. Harper at the time was a non-resident, living in Dover, New Jersey. He was notified by mail of the filing of the petition and hearing and responded by a signed letter addressed to the referee in which he claimed an interest in the asphalt and the right to a perpetual royalty from the property in question and objected to the property being sold free of his lien. The bankruptcy court treated the letter as a response and entered an order directing that the property be sold free of any lien claimed by Harper, and adjudged that his lien and claim attach to the proceeds of sale. The order also gave to Harper time for filing his proof of claim. Thereafter Harper filed an instrument which he styled "Proof of secured debt of J. L. H. Harper and claim to interest in real estate." By the first paragraph of this instrument he made proof of claim in the amount of $24,000 being the minimum royalty of $4,000 per year for six years. In the second paragraph he claimed that the future royalties reserved to him was a property right which was not conveyed to the bankrupt and therefore never passed to the trustee and that the bankruptcy court had no jurisdiction to administer on the same, and accordingly objected to a sale of the said assets free from his right to future royalties. This proof of debt and claim to interest in real estate was objected to by other creditors. Harper also filed a motion to set aside the order of sale previously entered and to dismiss the objections of the creditors to his claim as filed. The Referee overruled Harper's motion to set aside the order decreeing the sale of the property in question and disallowed Harper's claim as set up in his proof of claim and claimant's petition. It is this order which is now up for review.

■■■■■ Harper's first contention is that as he was a non-resident and not before the Court when the first order of sale was entered, it is therefore void and the Court did not have jurisdiction over him in that it could not act extra-territorially. There are two answers to this contention. Harper voluntarily responded to the notice sent him calling upon him to assert his right or be forever barred without objecting to the jurisdiction, and his plea to the jurisdiction after submitting to the judgment of the Court comes too late. Also the property being administered is within the jurisdiction of the bankruptcy court and it may pass upon the claims of non-residents to the real estate in question by giving them proper notice and an opportunity to be heard. The effect of such a ruling is of course restricted to the property within the jurisdiction of the bankruptcy court. In re Wood and Henderson, 210 U.S. 246, 28 S.Ct. 621, 52 L.Ed. 1046.

The other contentions of Harper require a consideration of the instrument of conveyance. It reads in part as follows: "That for a valuable consideration the receipt of which is hereby acknowledged and as further consideration the party of the second part hereby agrees to pay to J. L. H. Harper, party of the first part, as royalty perpetual in Character covering all unmined asphalt in and upon the lands hereinafter described, which royalty is to

be paid by said second party to the said J. L. H. Harper at the rate of Twenty cents per ton of Two Thousand pounds, on all commercial asphalt actually sold, and at a rate of five cents per ton of Two Thousand Pounds, on all waste asphalt actually sold, a minimum of Four Thousand (4,000) Dollars to be paid per year, the said royalty to be paid on the Tenth day of January, April, July and October of each and every year, the same to become effective beginning not later than one year from the date hereof, and if the plant is sooner in operation, then to begin contemporaneously with the production and marketing of the said asphalt, a lien being expressly retained on the property herein conveyed to secure the payment of the said royalties, the parties of the first part do hereby sell, demise, transfer and convey unto the party of the second part all their options, rights, titles and interest in and to the option, leases, or fee simple title or privileges which are theirs, or in their name, or under their control, other than an interest commensurate with the royalties herein provided for in and to the asphalt and the lien retained herein to secure the payment of the said royalties, with covenant of General Warranty, the rights, options, leases, privileges or fee simple title as so qualified lying and being the counties of Hart and Edmonson, State of Kentucky, and described as follows:"

After describing the real estate the instrument also provides as follows: "It is further agreed and understood by the parties hereto that in the event of a failure of the said second party to meet when due four quarterly payments of royalties as provided herein, the said first party J. L. H. Harper may declare all royalties due and proceed at once to enforce his said lien."

■ If Harper's interest in the real estate is merely a lien there seems to be no question but that the Referee had the right to order its sale free of such lien. A court of bankruptcy has power to order a sale of real estate of the bankrupt free of any liens claimed against it, without first determining the validity or amount of the liens, and to transfer the liens to the proceeds. In re E. A. Kinsey Co., 6 Cir., 184 F. 694; In re Loveland, 1 Cir., 155 F. 838; In re Franklin Brewing Co., 2 Cir., 249 F. 333. Harper contends, however, that his interest in the real estate is not a lien but on the contrary is a property right which can not be sold by the trustee because it never passed to the trustee as an asset of the bankrupt estate. He claims (a) that the reservation of the royalty was in reality a reservation of rent and that the bankrupt accordingly acquired only a leasehold estate; and (b) that the reservation in the deed was in substance a reservation to him of an incorporeal hereditament, which is a property right, and that this property right did not pass to the bankrupt under the deed in question but remained the property of the grantor. These contentions will be discussed in turn.

■ The Kentucky Court of Appeals has held that under some conditions the reservation of a royalty is a reservation of rent, making the transaction a lease instead of a sale. Williamson v. Williamson, 223 Ky. 589, 4 S.W.2d 392; Saylor v. Howard, 229 Ky. 826, 18 S.W.2d 279. It is also the rule that a claim for future unaccrued rents is not a provable claim in bankruptcy. Manhattan Properties, Inc. v. Irving Trust Co., 291 U.S. 320, 54 S. Ct. 385, 78 L.Ed. 824. Accordingly, if the transaction is construed as a lease, the property could not be sold free of Harper's claim. In the Williamson case the Court drew a distinction between a conveyance granting the privilege to mine the minerals to exhaustion and a conveyance with a limited privilege to mine, and held under the facts in that case that since the conveyance did not give the right to mine to exhaustion it was a lease rather than a sale. In the Saylor case the conveyance was for a limited period of time. In the present case the conveyance is in fee and for a perpetual royalty, giving the right to mine to exhaustion. The Williamson opinion cites authorities from other states holding that the privilege to mine with the right to extract the mineral to exhaustion constitutes a sale of the mineral, although paid for by royalties as and when the mineral is extracted, and points out that the controlling element is the intention of the parties as gathered from the instrument creating the right. Considering the intention of the parties in the present case as disclosed by the wording of the instrument above referred to and the right granted to mine to exhaustion, the Court is of the opinion that the instrument is not to be construed as a lease.

■ The Kentucky Court of Appeals has also held that a reservation to the grantor of a portion of the mineral produced by

the grantee, is a property right subject to taxation, Mt. Sterling Oil & Gas Co. v. Ratliff, 127 Ky. 1, 104 S.W. 993; that a lease giving the right to extract minerals from the property is likewise a property right subject to taxation, Wolfe County v. Beckett, 127 Ky. 252, 105 S.W. 447, 17 L.R.A.,N.S., 688; and that a royalty contract under a lease was also a property right subject to taxation, Stepp v. Pike County Board of Supervisors, 194 Ky. 176, 238 S. W. 408. Petitioner relies upon these authorities as sustaining his contention that the deed in question reserved to him an interest in the real estate which can not be sold by the trustee. The cases hold, however, that the various rights reserved are property rights subject to taxation, but not that they are rights in the nature of real property. As was said in the Mt. Sterling Oil & Gas Co. case, supra: "Whether the right reserved to appellant by the lease contract to one-sixteenth of the oil produced by its assignee be called personal property, a chattel real, incorporeal hereditament, or privilege, it is property and as such subject to taxation, under section 4039, Ky.St.1903, which provides: * * *." The instrument under consideration expressly reserves a lien "on the property herein conveyed to secure the payment of the said royalties;" it further provides that upon default by the grantee "Harper may declare all royalties due and proceed at once to enforce his said lien." Although there are other expressions which might possibly be construed as reserving an interest in the real estate, yet, on the whole, the Court is of the opinion that it was the intention of the parties to convey a fee with a lien retained to secure the payment of the consideration agreed upon. Although no attempt has been made by the claimant to place a value on future royalties, which his lien would secure, there seems to be no reason why such a valuation could not be reached by estimating the quantity of the asphalt subject to removal. Such a claim, if a valid one under other considerations in this case, would be protected by the lien against the proceeds of sale. The order of the referee that the real estate be sold free of the lien and claims of the claimant Harper is therefore approved.

The evidence shows that the bankrupt corporation was capitalized at One Million Dollars, consisting of 10,000 shares of $100 par value; that 1250 shares were issued to Harper in payment for the transfer of the real estate, subject to a $24,000 mortgage which the company assumed; that Harper was employed as the sole selling agent of the stock of the company and sold to the public only 110 shares and in the final analysis only 1482 shares were issued; that Harper owned the great majority of the issued stock after selling to others 330 shares of the stock issued to him; that Harper moved to New York and refused to return to attend stockholders' meetings or to send his proxy, even though the company offered to pay his expenses, and accordingly stockholders' meetings could not be held for lack of a quorum; that the cash from sales of stock was used, after commissions of fifteen percent to Harper, in meeting minor expenses and paying part of the mortgage against the real estate; and that the company was never able to get into operation on account of lack of funds. The finding of the Referee, from the foregoing facts, that Harper breached his fiduciary duties owed by him to the corporation and deserted the corporation which he had promoted and launched after failing to obtain subscriptions for fifty percent of the capital stock, which was a legal prerequisite under Kentucky Statutes to transacting any business, is sustained by the evidence and approved. The Referee's legal conclusion that because of said facts Harper's claim against the corporation for minimum royalties while the company was not in operation is not a valid one, is likewise approved. Where the failure to perform a contract is due directly or indirectly from the act of the promisee, it is a sufficient excuse for non-performance by the promisor. Juett v. Cincinnati, N. O. & T. P. R. Co., 245 Ky. 379, 53 S.W.2d 551.

The petition to review is dismissed, and the order of Referee complained of is approved.